[Civ. No. 19531. First Dist., Div. Two. Oct. 25, 1961.]

Estate of HAROLD PAUL TASSI, Deceased. MARJORIE B. TASSI, Petitioner and Appellant, v. EDWIN G. TASSI, Objector and Appellant.

Stark & Champlin, John F. Wells and Ralph J. Moore, Jr., for Objector and Appellant.

Wallace B. Colthurst, Orlando J. Bowman and Edmund L. Regalia for Petitioner and Appellant.

SHOEMAKER, J.—Petitioner Marjorie Tassi brought this suit to obtain a determination of heirship as the surviving spouse of Harold Tassi, deceased. In her petition, Marjorie Tassi alleged that the last will and testament of Harold Tassi had been admitted to probate, but that said will had been executed by decedent on May 29, 1941, prior to his marriage on January 31, 1942, to petitioner. Since this will made no mention of petitioner as a prospective spouse (although she was left a bequest in her maiden name), petitioner therefore prayed that the will be revoked as to her. She further asserted that all assets acquired by decedent during marriage were community property and prayed that she be awarded all the community property and one-half of decedent's separate property.

Petitioner's attack upon the will was opposed by Edwin Tassi, decedent's brother and principal beneficiary under it. Edwin Tassi (hereafter referred to as "claimant") denied that petitioner was entitled to assert her rights by way of heirship proceedings, contending that decedent's will had been admitted to probate on March 9, 1953, and that petitioner was barred by sections 380 and 384 of the Probate Code from any attempt to revoke the will. Claimant further alleged that petitioner's right to revoke decedent's will was barred by an oral marriage contract between petitioner and decedent, and also that petitioner was estopped to pursue her proceedings because she had allowed decedent to provide for her by other means and had represented to decedent that because thereof she would not seek to take under his will. Claimant also alleged that the parties were bound by the judgment in the prior action of *Tassi* v. *Tassi* (1958), 160 Cal.App.2d 680 [325 P.2d 872], in which the present petitioner was plaintiff and Edwin Tassi defendant, and wherein the court determined that the business owned and operated by decedent was his separate property, and that all earnings from this business were allocable 27 per cent to community property and 73 per cent to decedent's separate property.

During that part of the present trial which was had before a jury, the trial judge removed two of claimant's defenses from the jury's consideration, namely, estoppel and marriage contract. The parties thereafter waived their right to a jury trial on the remaining issues and the proceedings continued as a court case.

At the conclusion of the trial, the court found that the will of the decedent was revoked as to the petitioner pursuant to

Probate Code, section 70, and that petitioner was not barred from asserting her claim of revocation by the prior proceedings admitting the will to probate. The court reaffirmed its ruling as to claimant's defenses of estoppel and the existence of a marriage contract. The court also found that two bank accounts in decedent's name (items 11 and 12 of the inventory) were community property; that both parties were bound by the prior adjudication in *Tassi* v. *Tassi, supra*; that the business itself was the separate property of decedent and that all assets which could be traced to net earnings from it were 27 per cent community property and 73 per cent separate property of decedent. However, the court held that this prior action had failed to conclusively establish that this business did not contain undrawn earnings, and that it had taken evidence thereon and concluded that this business did not in fact contain undrawn earnings and was therefore entirely decedent's separate property.

Petitioner Marjorie Tassi now appeals from the court's finding that decedent's business was entirely his separate property and that the earnings therefrom were separate and community property in a 73/27 ratio. Claimant Edwin Tassi appeals from the court's finding that the two bank accounts in decedent's name were community property of decedent and petitioner, and from the findings that decedent's will was revoked as to petitioner and that estoppel did not constitute a valid defense to this revocation.[1]

Petitioner's first contention on appeal is that the trial court erred in holding that the judgment in the prior action of *Tassi* v. *Tassi, supra*, was res judicata as to petitioner's right to prove that probate assets traceable to earnings of decedent's business were entirely community property. This prior suit was brought by petitioner to recover one-half of various properties which were allegedly gifts of community property made by decedent, without petitioner's consent, to claimant Edwin Tassi, and resulted in the judgment we have mentioned, and which was affirmed, the appellate court holding that the findings were amply supported by the evidence.

Petitioner now contends that this prior determination should not have been considered binding in the instant case because the prior *Tassi* case did not consider the nature of probate

[1] Since in the instant case both parties are appealing from separate portions of the judgment and there are thus two appellants named Tassi, Edwin Tassi will continue to be designated ''claimant'' and Marjorie Tassi ''petitioner.''

assets but dealt only with assets which were the subject of *inter vivos* gifts; that probate assets were expressly excluded from the court's consideration by stipulation of the parties. Hence, petitioner argues that the principle of res judicata cannot apply. The contention is not well founded. The principle upon which the lower court held the *Tassi* case controlling was not that of res judicata, where the causes of action must be the same, but that of collateral estoppel. ▮ Where a second action between the same parties is brought on a different cause of action, the first judgment " ' ' "operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." ' ' " (*Taylor* v. *Hawkinson* (1957), 47 Cal.2d 893, 895, 896 [306 P.2d 797]; *Todhunter* v. *Smith* (1934), 219 Cal. 690, 695 [28 P.2d 916].) In *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955), 44 Cal.2d 715, 724-725 [285 P.2d 636], the court stated the rule as follows:

"[I]t is settled that even though the causes of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination."

▮ The basic point which petitioner ignores is that the precise issue before the court in both cases was the nature of a specific business, the Associated Meat Company, and the earnings derived from this business. The determination of this issue was necessary in order to determine the amount of community property which went into certain gifts made by the decedent during his lifetime. In the instant case, the issue must be resolved in order to determine the distribution of certain assets within the decedent's estate. In both cases, however, the underlying issue was identical—the community or separate property character of a specific business and the earnings derived therefrom.

▮ Petitioner argues, however, that the 73/27 ratio by which the allocation of earnings was made in the prior adjudication was arrived at only after " 'adjustment for all relevant matters' ", and that the adjustments made were applicable to *inter vivos* transfers of earnings but not to earnings which are part of the estate, so that the prior litigation cannot be deemed controlling as to the instant proceedings.

It is petitioner's position that the adjustments made in the prior action were for living expenses and taxes, and that these taxes and living expenses were deducted from the nonprobate

assets alone. However, petitioner's claim fails, for an examination of the record shows that the court took the overall total of all business earnings from February 1, 1942 through February 19, 1953, and, after deducting the necessary expenses, found these earnings to be 27 per cent community property and 73 per cent decedent's separate property. The various expenses were thus deducted from the business earnings *before* they were used to acquire various assets, whether these assets were probate or nonprobate.

■ Petitioner's next contention is that the trial court erred in finding that the business itself was entirely decedent's separate property and did not contain any accumulated earnings. Petitioner first argues that the finding in the prior litigation that the business was decedent's separate property was a collateral fact not necessary to the prior decision and should not, therefore, be binding in the instant case. We do not agree that the determination as to the character of the nonprobate assets could have been made without first ascertaining the character of the business itself, since all these assets were ultimately traceable to business earnings. At the time that the prior judgment was rendered, petitioner obviously considered the character of the business to have been essential to the court's decision since she specifically attacked this finding on appeal, urging that the evidence in support thereof was insufficient. (See *Tassi* v. *Tassi, supra,* at p. 688.) Only now does petitioner contend that the character of the business was a collateral issue in this prior action and should not be binding in the instant case. Petitioner's contention is untenable.

■ Petitioner next attacks the trial court's finding that the business did not contain any accumulated earnings. The trial court allowed this issue to be litigated by the parties because it considered the prior *Tassi* determination, although finding the business itself to be separate, had not conclusively resolved the question of whether or not this business contained accumulated earnings. Petitioner now contends that the court's finding that there were no accumulated earnings in the business is not supported by the evidence. Petitioner alleges that the book value of decedent's business at the date of his marriage to her was $15,707.88, and that the book value at the date of decedent's death was $36,990.11. Petitioner contends that this increase must have been due to accumulated capital. Claimant, on the other hand, points out that there was an additional investment of $27,615.01 in 1943 and that

the trial court found this amount to have been derived from decedent's separate property. The trial court further found that the net earnings of the business during the entire duration of the marriage totaled $441,472.77, but that the decedent withdrew $447,805.75. Since decedent's withdrawals thus exceeded his earnings, it would seem that this fact alone would provide adequate support for the trial court's finding that the business contained no accumulated earnings. Petitioner argues, however, that the additional investment of $27,615.01 might well have represented an accounting manipulation by which accumulated earnings were reflected as capital. This issue presented a question of fact which was properly determined by the trial court.

We conclude that none of the grounds raised by petitioner compel a reversal of the trial court's decision.

We pass now to a consideration of the points raised by claimant Edwin Tassi in support of his separate appeal. It is claimant's position that the lower court was without power to revoke the decedent's will as to petitioner, since such a claim should properly have been raised during the probate proceedings. Claimant alleges that the will was admitted to probate on March 9, 1953, but that petitioner did not commence the instant heirship proceedings until almost five years later, and hence the proceedings are barred by Probate Code, sections 380 and 384.

Petitioner Marjorie Tassi argues, however, that probate proceedings are conclusive only as to the validity and due execution of the will, and that sections 380 and 384 do not bar a later proceeding to determine heirship where the validity of the will is not questioned, but the only problem is the right of the surviving spouse to take despite the will.

Petitioner contends that the rights of a spouse, who takes independent of the will, should be governed by the same rules as are applied to a pretermitted heir. It is established that a pretermitted heir has no interest which can be affected by admitting a will to probate, and that his rights are properly asserted through distribution or heirship proceedings. (*Estate of Sankey* (1926), 199 Cal. 391 [249 P. 517].)

Petitioner correctly points out that our courts have held that the probate of an instrument merely determines the validity of its execution and not the sufficiency or invalidity of its provisions. (See *Estate of Pforr* (1904), 144 Cal. 121, 125 [77 P. 825].)

Claimant concedes the foregoing rule as to a pretermitted heir, but argues that this rule is not applicable in the case of a surviving spouse. We cannot conceive of any basis for a distinction. It would seem clear that the controlling statutes were intended to accomplish the identical result in both cases. The effect of both provisions (Prob. Code, §§ 70 and 90) is to revoke the will only as to the spouse or issue, who are then entitled to take the share to which they would have succeeded had the decedent died intestate. (See 4 Witkin, Summary of California Law, Wills & Probate [7th Ed. 1960] § 41, pp. 3029, 3030, for a comparison of the two code sections.) In both cases, the spouse or issue take independent of the will, and the remainder of the will, which is unaffected by the intestate rights of the spouse or issue, remains operative. Under these circumstances, it would not appear that a surviving spouse, any more than a pretermitted heir, should be entitled to contest the validity and due execution of the will in probate proceedings. Since her rights arise independent of the will, they should properly be enforced through distribution or heirship proceedings.

In *Estate of Challman* (1954), 127 Cal.App.2d 736 [274 P:2d 439], just such a procedure was followed by the court. In the *Challman* case, the testator had executed a will prior to his marriage in which was included a specific bequest to a niece of his former wife. The testator subsequently married the niece and thereafter attempted to change the will by deleting the specific bequest and inserting his wife's name in the residuary clause. On the same day, the testator added to the end of the will the statement that the wife should have certain amounts deducted from her bequest (in order to repay certain loans she had made the testator). The will was then admitted to probate, with the probate court excluding the deleted bequest and the alteration to the residuary clause, but holding the portion at the end of the will to be a holographic codicil. After the probate orders had become final, as in the case at bar, the wife petitioned for a determination of her interest in the estate. The trial court found that the will and codicil were revoked as to the surviving spouse pursuant to Probate Code, section 70. The appellate court, in affirming the decision, held that the trial court had not exceeded its jurisdiction, and quoted the following passage from the trial judge's memorandum opinion:

". . .'The order admitting the two documents to probate now stands as a conclusive adjudication of their status as

a will and a codicil thereto. But such a ruling does not affect the power of the court to determine their import under applicable rules of construction in resolving the opposing claims for distribution of the estate in a proceeding under Probate Code, section 1080. (*Estate of Salmonski*, 38 Cal.2d 199, 208-209 [238 P.2d 966].)' '' (P. 739.)

Claimant contends, however, that the *Challman* case is distinguishable because "based on a peculiar set of facts not likely to recur." Claimant further argues that the *Challman* case involved nothing more than "interpretation of the will and codicil," whereas in the instant case the court is actually overturning the probate court's findings of due execution and validity of the will. There is little merit to this contention. In both cases, the action of the court is merely to award the surviving spouse a right which she takes independent of an admittedly valid will. In 44 California Law Review 171 (1956), the *Challman* case was analyzed, and the writer made specific mention of the court's finding that the case was properly before the court since the prior admission to probate was not "a decision as to the dispositive effect of either or both instruments." (P. 171, fn. 6.) The writer then made the following comparison to the rights of pretermitted heirs:

"It seems difficult, however, to distinguish between disposing of the rights of a spouse under section 70 and disposing of the rights of a pretermitted heir under section 90. The interest of a pretermitted heir is not adversely affected by the probate of a will, and he does not have the right to contest the probate on the grounds of his omission, *Estate of Sankey*, 199 Cal. 391, 249 P. 517 (1926) . . . Essentially the same consequences occur when a will is revoked as to the spouse as when the pretermitted heir is allowed to succeed to the same share of the estate as if there had been no will. In either situation the person involved receives whatever is his intestate share of the estate and to the extent the estate exceeds such share, the will is valid. The conclusiveness of probate, therefore, should not bar the spouse's claim to an intestate share of the estate." (P. 172, fn. 6.)

Claimant argues, however, that section 70 claims have been raised in probate proceedings in a number of cases (see *Estate of Robertson* (1957), 151 Cal.App.2d 209-211 [311 P.2d 573]; *Estate of Smith* (1936), 15 Cal.App.2d 548, 549-550 [59 P.2d 854]), and urges that petitioner is therefore in error in contending that the cases dealing with pretermitted heirs are analagous. In none of the cases cited by claimant

does it appear that any objection was ever raised to the intervention of the surviving spouse. Certainly the fact that the courts have in actual practice allowed section 70 claims to be raised in probate proceedings cannot be construed as authority for the proposition that a surviving spouse who failed to raise her claim in probate cannot thereafter do so by way of heirship proceedings. Even though the court may allow section 70 claims to be adjudicated at probate and thus be resolved as expeditiously as possible, a spouse would not be barred by her failure to urge her claim at this stage in the proceedings. Since the admission of the will to probate merely establishes its due execution and validity, and since the spouse by a subsequent heirship proceeding does not challenge this finding but asserts rights independent of the will, we fail to see why her rights should in any way be affected by the prior probate proceedings. The cases cited by claimant appear to be authority only for the proposition that section 70 claims have in practice been raised in probate where no objection was made to this procedure.

Claimant next contends that the trial court erred in ruling as a matter of law that petitioner could not be estopped from revoking decedent's will. The trial judge held that the matters urged as creating an estoppel would not constitute a defense to petitioner's right, pursuant to Probate Code, section 70, to revoke the decedent's will. Claimant had previously made an offer of proof on the issue of estoppel from which it may be inferred that his evidence would have established that petitioner knew of decedent's intention to leave her out of the will and to provide for her by means of trustee accounts for her benefit; that she led him to believe that this would be agreeable to her; and that decedent, in reliance upon her representations, made no effort to make a new will, republish the old will, or otherwise guard against any claim petitioner might assert against his estate.

Assuming for the purposes of this appeal that claimant could have produced evidence in support of the aforementioned facts, they would not have constituted a valid defense against petitioner's claim under Probate Code, section 70. Section 70 provides as follows:

"If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such

provision; and no other evidence to rebut the presumption of revocation can be received.''

It is apparent to us that, under this statute, the presumption of revocation which arises when a testator marries after making a will can be rebutted *only* by evidence in support of the specific defenses set forth within the section itself. Since the statute makes no mention of estoppel as a permissible defense, we conclude that claimant's offer of proof was properly denied pursuant to the express wording of the section that ''no other evidence to rebut the presumption of revocation can be received.'' Claimant asserts that the general principle of equitable estoppel has long been recognized as a valid defense and ought to be applicable in the case at bar despite the express wording of section 70. Such position finds no support in our decisions. (See *Corker* v. *Corker* (1891), 87 Cal. 643, 648 [25 P. 922] ; *Estate of Smith, supra.*) As was stated in *Estate of Turney* (1951), 101 Cal.App.2d 720, 722 [226 P.2d 80], ''A party seeking to rebut the statutory presumption of revocation must bring himself within the literal terms of one of the exceptions.''

 Claimant further contends that even if estoppel did not constitute a valid defense, the evidence offered by him was relevant as proof of a marital contract. Although proof of such a marriage contract is clearly permissible under the terms of section 70, petitioner argues that such proof may consist only of the instrument *itself* and that oral evidence of such an agreement will not suffice to rebut the presumption of revocation.

However, the determination of this question becomes unnecessary, since none of the testimony proffered by claimant would have been competent evidence that the decedent ever entered into such an oral marriage contract with petitioner. Claimant concedes that the only manner in which he could have proved the existence of the alleged contract was through statements made by the decedent that he had entered into such an agreement. Such testimony by a witness that the decedent had told him of a prior oral agreement with petitioner would clearly be hearsay, offered to prove the truth of the decedent's statement. Claimant attempts to bring such testimony within an exception to the hearsay rule by arguing that the declaration of a testator as to a past act of making a will may be admitted as evidence that he did perform this act. (*Estate of Morrison* (1926), 198 Cal. 1 [242 P. 939].)

This exception to the hearsay rule is discussed in Witkin, California Evidence, section 277, page 313, where the author states:

"The rule against admitting declarations as to past acts (*supra*, § 265) has been substantially abrogated in many cases dealing with declarations of a testator concerning his will or lack of it. The influential considerations have been necessity (declarant deceased and issue of vital importance) and trustworthiness (special knowledge of testator, unlikelihood of false statements). It is difficult to explain these cases consistently with others which exclude declarations of past acts, and it has been suggested that a new exception to the hearsay rule should be formulated for will cases."

Claimant argues that this exception to the hearsay rule must be deemed applicable in the case at bar because a marriage contract is included within the plan of testamentary disposition and should thus be governed by the same rules as the will itself. Such a contention cannot be sustained. Although the declaration of a testator may under certain circumstances be admissible as evidence that he did or did not make a specific will, it is extremely doubtful that such an exception to the hearsay rule could properly be extended to a declaration that the testator did or did not enter into a marriage contract. Where the declaration is as to the making of a will, the situation is one where the testator alone has special knowledge, since the making or revoking of a will is an act completely within his control and is one which he may perform wholly unaided. Indeed, in many situations, no one other than the testator could possibly have knowledge of whether the testator revoked a specific will. In the case of a marriage contract, however, it is necessary that the consent of both contracting parties be manifested. Where, as in the case at bar, the declaration of a testator provides the only evidence that such a contract exists, such a declaration must of necessity support two inferences—that the testator himself consented to the contract, and that a third party, whose acts were certainly not within the testator's control, also assented to the contract. The statement of the testator thus serves as evidence of his own acts and those of another person as well. It would be most illogical to extend the hearsay exception relating to the testator's will to encompass such a situation.

Claimant's final contention is that there is no evidence to support the finding of the trial court that two items in the inventory were community property of petitioner and

the decedent. The two items (nos. 11 and 12 of the inventory) were savings accounts which, at the time of his death, stood in the name of the decedent alone. During the course of the trial, testimony was introduced by petitioner to show that the funds contained in these accounts had originally been given to her by the decedent to deposit in their joint safety deposit box. Petitioner testified that the decedent would give her small amounts of cash from time to time, and that he had started this practice around 1943. When the amounts deposited had reached $12,000, petitioner testified that she and the decedent decided to open a joint bank account. She thereupon took the money to decedent's office where he wrote out two business checks, each for $5,000. Petitioner then took the checks and opened joint accounts in two separate banks. When the parties later moved their place of residence, the accounts were transferred to other banks but were still kept in the form of joint tenancy accounts. Then, in 1951, the decedent, without petitioner's knowledge, removed her name from both accounts and placed them in his name alone. On cross-examination, petitioner testified that decedent, during the period when he brought petitioner sums of money to be deposited in their joint safety deposit box, was operating the Associated Meat Company. She further testified that decedent had no other source of income than the meat company at that time.

It is claimant's position that the trial court specifically held that the parties were bound by the prior adjudication, and that each asset which was traceable to the net earnings and profits of the meat company was 27 per cent community property of the parties, and 73 per cent separate property of the decedent. Claimant points out that none of the evidence produced by petitioner casts any doubt on the fact that the money contained within the savings accounts was originally derived from the earnings of the business. As such, it was governed by the prior adjudication and was, of necessity, 27 per cent community property and 73 per cent separate property of decedent. In support of this contention, claimant cites *Estate of Bauer* (1889), 79 Cal. 304, 309 [21 P. 759], where the court set forth the rule that property acquired with funds partly belonging to the community and partly to the separate property of one spouse becomes in part separate and in part community property in proportion to the original investments, and will retain this character through its various mutations.

Claimant's Exhibit D (page 1 of Schedule 4) contained an analysis by an accountant showing that one of the savings accounts (item 11) consisted entirely of funds withdrawn from the meat company and the other account (item 12) consisted partly of meat company funds and partly of funds from unidentified sources. The trial court clearly did not rely on this exhibit in making its finding that the accounts consisted entirely of community property.

The testimony of petitioner herself would tend to indicate that the funds were derived entirely from the meat company, since her testimony on cross-examination was to the effect that the decedent had access to no other source of funds at the time in question. It would appear that the real purpose of petitioner's testimony was to establish that the decedent had converted the funds into joint tenancy property when he voluntarily withdrew them from the business and had them placed in the joint tenancy safe deposit box. Assuming this to be the case, petitioner's interest in these funds as a surviving joint tenant would not be derived from the estate, since she would be claiming the funds as her separate property. Such a claim may not be asserted in an heirship determination where the court has no jurisdiction to adjudicate rights claimed adversely to the estate. (*Estate of Dodge* (1935), 9 Cal.App.2d 650, 654 [50 P.2d 839].) Since an heirship proceeding is limited to a determination of rights claimed in privity with the estate and since any interest which petitioner acquired by virtue of joint tenancy would be a claim adverse to the estate, petitioner's evidence as to the joint tenancy nature of the funds was clearly unrelated to the issues properly before the court. To the extent that her testimony can be viewed as an attempt to trace the funds and thus allocate between assets of the estate which were decedent's separate property and assets which were community property, it would seem equally clear that petitioner's testimony provided no support for a finding that the savings accounts consisted entirely of community property.

Petitioner contends that the presumption that the accounts were community property ought to prevail where the evidence is conflicting. In *Tassi* v. *Tassi, supra,* at p. 689, the court stated, " 'The presumption that property acquired during marriage is community is controlling only when it is impossible to trace the source of the specific property. . . .' " In the instant case, the claimant introduced into evidence an exhibit in which the assets contained in the two accounts were

traced in the following manner: One account was acquired entirely with funds withdrawn from the meat business, and the second account was acquired as to $2,550 with meat company funds, and the balance, $1,505.73, with funds from unidentified sources. Petitioner's own testimony not only failed to cast doubt on the tracing process outlined in this exhibit, but indicated, to the contrary, that claimant's accountant may have been overly conservative in classifying any part of the funds as "unidentifiable." It would therefore seem clear that the trial court erred in finding the two bank accounts to be entirely community property. Since claimant's exhibit constitutes the only evidence as to the source of these funds and since petitioner offered no evidence that claimant's tracing was inaccurate, the trial court should have found the bank accounts to be community property only to the extent that they were "unidentifiable" and thus subject to the applicable presumption. Since the remainder of the funds contained within these accounts were traced by claimant to earnings of decedent's business, the previously established allocation of 27 per cent community property and 73 per cent decedent's separate property should have been applied as to them.

In accordance with the foregoing, the judgment is modified as follows: The bank account designated Item 11 is held to be 73 per cent separate property and 27 per cent community property. The bank account designated Item 12, as to $2,550 thereof, is likewise 73 per cent separate property and 27 per cent community property, and the balance thereof, $1,505.73, is community property. In all other respects, the judgment is affirmed. Appellant Edwin G. Tassi to recover costs on appeal.

Kaufman, P. J., and Agee, J., concurred.

The petition of the objector and appellant for a hearing by the Supreme Court was denied December 20, 1961.