[Civ. No. 43511. Second Dist., Div. Two. May 28, 1974.]

Estate of BETTI MOSS CANTOR, Deceased.
EDWARD B. CANTOR, Claimant and Appellant, v.
STEFFANI TURMAN et al., Claimants and Respondents.

COUNSEL

Harry C. Mabry and Baker, McNairy & Baker for Claimant and Appellant.

Snyder & Snyder and Harold W. Snyder for Claimants and Respondents.

## OPINION

**FLEMING, Acting P. J.**—Edward B. Cantor appeals a judgment of the probate court determining that by reason of an antenuptial agreement he had no interest in the estate of his deceased wife, Betti Moss Cantor.

Betti died testate on 22 January 1972, survived by her spouse, Edward, and by Steffani Turman, her daughter from a previous marriage. Betti's will and codicil, executed prior to her marriage to Edward, left her entire estate of over $400,000 to Steffani without making provision for Edward.

Edward asserted his right to a share in the estate in spite of Betti's will and the antenuptial agreement, claiming pursuant to the provisions of section 70 of the Probate Code: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, *unless provision has been made for the spouse by marriage contract,* or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received." (Italics ours.) The probate court accepted Edward's position in part, and, while admitting the will to probate for other purposes (see *Estate of Russell,* 43 Cal.App.2d 319 [110 P.2d 718]), revoked the will insofar as it interfered with Edward's statutory right to share in the estate as a surviving spouse. Edward conceded the estate contained no community property in which he might share but claimed a one-half share of Betti's separate property pursuant to Probate Code, section 220: "The separate property of a person who dies without disposing of it by will is succeeded to and must be distributed as hereinafter provided, *subject to the limitation of any marriage or other contract,* . . ." (Italics ours.) Section 221: "If the decedent leaves a surviving spouse, and only one child or the lawful issue of a deceased child, the estate goes one-half to the surviving spouse and one-half to the child or issue. . . ."

The probate court, however, found that on 3 June 1970, the day of their marriage, Edward and Betti executed a valid antenuptial agreement

which qualified as a "marriage or other contract" under section 220. That agreement provided: "4. Each party waives, discharges and releases any and all claims and rights that he or she may acquire by reason of the marriage, to share in any capacity or to any extent in the estate of the other, whether by way of family allowance, probate, homestead or otherwise, except as to such property as may be determined to be their community property under the laws of the State of California.

"................................

"8. Notwithstanding the provisions of this agreement, either party may transfer, convey, devise or bequeath any property to the other provided said transfer, conveyance, devise or bequest is in writing. Neither party intends by this agreement to limit or restrict in any way the right to receive any such transfer, conveyance, devise or bequest from the other, provided said transfer is in writing." By reason of the agreement, the court concluded that Edward had no interest in Betti's estate. The court also rejected Edward's claims that he had not waived his rights by entering into the antenuptial agreement and that he rescinded the agreement in January 1973.

Edward's many contentions on appeal distill into three basic arguments: (1) Section 70 controls over section 220 and entitles him to share in the separate property of Betti's estate; (2) he did not knowingly waive his right to inherit from Betti's estate; (3) he effectively rescinded the antenuptial agreement.

1. *Application of Statutes.* Edward contends his right to share in Betti's estate as a surviving spouse pursuant to section 70 supersedes any contractual waiver authorized by section 220. He offers various arguments: Section 220 applies only when a person dies without disposing of separate property by will, and here Betti attempted to dispose of property by will; section 70 provides that "no other evidence to rebut the presumption of revocation can be received"; section 70 voices a strong public policy against a testator's failure to provide for a spouse; as surviving spouse Edward's rights of inheritance in Betti's separate property vested automatically on Betti's death; an antenuptial agreement cannot logically be construed to fail to make provision for a spouse under section 70 and at the same time to waive spousal rights under section 220.

We reject these sophistic arguments. They ignore the fundamental and obvious point that the sections which control disposition of intestate property function independently of the sections which determine what property

is intestate. Section 221, which provides for intestate disposition of the estate to a surviving spouse and child and under which Edward claims a share of Betti's estate, can only be read in conjunction with section 220, which explains that the "estate" referred to in section 221 is the separate property of a decedent not disposed of by will. Section 70 cannot, and does not, provide an alternative disposition to section 220 for intestate property in that it gives no guidance to the meaning of the term "estate" in section 221. Section 70 merely revokes Betti's will insofar as Edward is concerned for lack of "*provision . . . for the spouse* by marriage contract." (Italics ours.) To determine the effect of such revocation we then turn to the statutes, e.g., sections 201 (community property) and 220 (separate property), which control the disposition of that part of her estate for which she did not provide by will. By its terms section 220 remains "subject to the limitation of any marriage or other contract," and under such a contract a spouse may waive his distributional share of decedent's separate property to which he would otherwise be entitled under section 221.

■ Public policy discourages a testator's failure to provide for a surviving spouse (*Estate of Paul,* 29 Cal.App.3d 690, 695 [105 Cal.Rptr. 742]), but it does not nullify that failure when the testator and spouse have mutually contracted to waive such provision. Thus section 70 decrees revocation "unless provision has been made for the spouse by marriage contract." We need not decide whether this particular antenuptial agreement amounted to "provision . . . for the spouse" within the meaning of section 70, for clearly it was a matrimonial contract within the meaning of section 220, and by its terms Edward and Betti each reserved the right to make such testamentary disposition of his separate estate as he or she might choose. Clearly, under their marriage contract each retained the right to dispose of his separate estate free and clear of the spousal inheritance provisions found in sections 220 and 221. We perceive no legal inconsistency in the probate court's application of the relevant statutes to the terms of the antenuptial agreement.

■ 2. *Waiver.* Edward contends he did not knowingly waive his spousal rights when he signed the antenuptial agreement. The probate court found to the contrary, and substantial evidence supports its finding. (See *State of California* v. *Broderson,* 247 Cal.App.2d 797, 803 [56 Cal. Rptr. 58].) Edward, an educated and sophisticated doctor who had married four times, testified to previous experience with antenuptial agreements and said he understood the purpose of such agreements was to protect the parties' financial interests.

Betti's attorney testified that Edward appeared to read the agreement before he signed it. The attorney also testified he worked out the terms of the agreement with Edward's attorney over the telephone and received no reply when he sent a copy of the signed agreement to Edward's attorney for verification. The law imputes knowledge of the agent (Edward's attorney) to the principal (Edward) (*Lazzarevich* v. *Lazzarevich,* 39 Cal.2d 48, 50 [244 P.2d 1].)

3. *Rescission.* On 2 January 1973, approximately one year after Betti's death, Edward filed a notice purporting to rescind the antenuptial agreement. He contends that failure of consideration nullified the antenuptial agreement, that Betti failed to comply with an oral agreement which predated the antenuptial agreement and by which each promised to bequeath half his estate to the other.

This contention lacks merit for Edward ignores the contrary finding made by the probate court: "No agreement, oral or written, was ever made by and between Edward B. Cantor and Betti Moss Cantor to the effect that upon the death of one of them, 50% of the estate of the Decedent would go to the survivor of them; nor to the effect that they would make reciprocal wills; nor did Edward B. Cantor ever rely thereon." Edward's own words belie his present contention and support the court's finding. In a deposition Edward said: "A requirement was never mentioned nor entertained. I said I was going to make up a will. If I had felt that way, I certainly would have said, 'We'll make it up at the same time and the same date and so forth, and I want to see yours at the same time you see mine, and so forth.'

"Nothing like that went on."

The notice of rescission, delayed for a year after Betti's death and filed only a few weeks before trial, smacks of afterthought.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.