[Civ. No. 3055. Fifth Dist. Nov. 23, 1977.]

Estate of FLORENCE SHELDON, Deceased.
OSCAR MARION HUFFMAN, Petitioner and Appellant, v.
DUANE PETERSON et al., Claimants and Appellants.

**COUNSEL**

Linneman, Burgess, Telles & Van Atta and James E. Linneman for Petitioner and Appellant.

Silveira, Garrett, Goul & Curry and Ben Curry for Claimants and Appellants.

**OPINION**

**BROWN (G. A.), P. J.**—In January 1974 the decedent, 80-year-old Florence Sheldon, married 78-year-old Al Sheldon. About eight months later, on September 14, 1974, Florence died testate, she having drawn a valid holographic will on April 19, 1972, which, aside from some conditional specific gifts to her grandchildren, left her estate in equal shares to her two children by a prior marriage. They are petitioner and appellant, Oscar Marion Huffman (hereinafter Marion), and contestant and appellant, Helen Peterson (hereinafter Helen). No provision was made in the premarriage will for her surviving husband, Al, nor was he mentioned in the will.

On September 19, 1974, and January 3, 1975, Al assigned his interest in decedent's estate to Helen and her husband, Duane Peterson.

Thereafter Marion filed a petition to determine heirship and Helen and her husband filed a statement of claim of interest in the estate based upon the assignments from Al. Since Helen's and her husband's claim (other than to what Helen is entitled as a named devisee and legatee under the will) is grounded on the assignments from Al, the ultimate issue herein is whether Al has a claim to one-third of the estate (see Prob. Code, § 221) by virtue of the provisions of Probate Code section 70[1] and, assuming Probate Code section 70 operates to revoke the will as to Al, the effect of Probate Code section 220.[2]

Marion contends that there was an antenuptial oral contract between the decedent and Al by the terms of which the decedent and Al agreed that neither would share in the other's estate; that the oral contract qualifies under Probate Code section 70 as a marriage contract under which provision is made for Al, thus preventing the revocation of the will as to him. Marion further argues that if it does not so qualify under Probate Code section 70 because the contract was oral (see Civ. Code, § 5134, requiring marital settlement contracts to be in writing) then the contract does qualify under the provisions of Probate Code section 220 which makes intestate succession under Probate Code section 221 "subject to the limitation of any marriage or other contract . . . ."

The case was submitted to the jury for its advisory verdict; the jury found that Al had no right to inherit any of the property of the decedent. By a special verdict the jury also found that there was a contract between the decedent and Al by which he agreed not to accept any inheritance from her estate and that decedent relied on the contract and changed her position to her detriment. The court entered findings of fact and conclusions of law which followed the special verdict and also found and concluded that, though oral, the contract was legally binding and enforceable because it was an executed and fully performed oral agreement, and that Helen and her husband were estopped to insist that the contract be in writing because decedent changed her position to her detriment in reliance upon the oral contract.

---

[1]Probate Code section 70 provides: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

[2]Probate Code section 220 provides: "The separate property of a person who dies without disposing of it by will is succeeded to and must be distributed as hereinafter provided, *subject to the limitation of any marriage or other contract,* and to the provisions of section 201.5 and Division 3 of this code." (Italics added.)

The finding of the oral contract was based upon the testimony of witnesses as to statements made by the decedent and Al. Al denied such an agreement at trial.

Helen and her husband moved for a new trial on the grounds of (1) "[i]nsufficiency of the evidence to justify the verdict, decision and judgment," (2) "[t]he verdict, decision and judgment are against the law," and (3) "[e]rrors in law, occurring at the trial . . . ." (See Code Civ. Proc., § 657, subds. 6, 7.)

The court granted a new trial without stating the grounds in its minute order or specifying the reasons as required by Code of Civil Procedure section 657.

However, within 10 days thereafter (see Code Civ. Proc., § 657) the trial court did sign a formal "Order Granting New Trial" which stated the grounds and specified the reasons. The order was admittedly prepared by counsel for Helen and her husband and not by the trial judge.

Marion has appealed from the order granting a new trial, and Helen and her husband have cross-appealed from the judgment.

Our first task is to determine the validity of the order granting a new trial. We think it clear beyond cavil that the formal order must be disregarded because it was not personally prepared by the trial judge. In pertinent part Code of Civil Procedure section 657 states that: "[I]f the motion is granted [the order] must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. *The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons.*" (Italics added.) (*La Manna* v. *Stewart* (1975) 13 Cal.3d 413, 424-425 [118 Cal.Rptr. 761, 530 P.2d 1073]; *Oberstein* v. *Bisset* (1976) 55 Cal.App.3d 184 [127 Cal.Rptr. 413]; 5 Witkin, Cal. Procedure (2d ed., 1977 pocket supp.) § 87, pp. 65-66.) ▮ Because the order was not prepared by the trial judge it is jurisdictionally defective. (*Worden* v. *Gentry* (1975) 50 Cal.App.3d 600 [123 Cal.Rptr. 496]; *Devine* v. *Murrieta* (1975) 49 Cal.App.3d 855, 860 [122 Cal.Rptr. 847].)

Nevertheless, on appeal the court should affirm the order granting a new trial if it should have been granted on any ground specified in the motion other than insufficiency of the evidence to justify the verdict, decision and judgment. (See Code Civ. Proc., § 657.)[3] (*Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 136-137 [65 Cal.Rptr. 330, 436 P.2d 330]; see also *La Manna* v. *Stewart, supra,* 13 Cal.3d 413, and *Worden* v. *Gentry, supra,* 50 Cal.App.3d 600.)

It follows that though we cannot consider the ground of insufficiency of the evidence to justify the verdict, we are required to discuss the other two grounds stated in the motion—"the verdict, decision and judgment are against the law" and "errors in law, occurring at the trial"—to determine whether either of these grounds furnishes a basis for affirming the order.

The arguments concerning whether the verdict is against the law focus upon the adequacy of an oral agreement to satisfy the requirements of Probate Code sections 70 and 220 in light of the provisions of Civil Code section 5134[4] providing that a marriage settlement contract must be in writing. This issue apparently has never been decided in this state.

Before addressing that question it will be informative and helpful to briefly discuss the relationship between Probate Code sections 70 and 220. In *Estate of Cantor* (1974) 39 Cal.App.3d 544 [114 Cal.Rptr. 160] a husband and wife entered into a written antenuptial contract by which each waived any claim to the estate of the other. The wife died leaving her entire estate to her daughter, the will making no provision for the husband. The court assumed, without deciding, that pursuant to Probate Code section 70 the will was revoked as to the husband, but held

---

[3]Code of Civil Procedure section 657 provides in pertinent part: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except that (a) the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."

[4]Civil Code section 5134 (formerly Civ. Code, § 178) provides: "All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as a grant of land is required to be executed and acknowledged or proved."

nevertheless that the contract prevented the husband from inheriting his intestate share under Probate Code section 220. The court acknowledged that public policy discourages a testator's failure to provide for a surviving spouse (*Estate of Paul* (1972) 29 Cal.App.3d 690, 695 [105 Cal.Rptr. 742]) but nevertheless rejected the concept that an antenuptial agreement cannot logically be construed to fail to make provision for a spouse under section 70 and at the same time amount to a waiver of spousal rights under section 220. The court stated: "They ignore the fundamental and obvious point that the sections which control disposition of intestate property function independently of the sections which determine what property is intestate. Section 221, which provides for intestate disposition of the estate to a surviving spouse and child and under which Edward claims a share of Betti's estate, can only be read in conjunction with section 220, which explains that the 'estate' referred to in section 221 is the separate property of a decedent not disposed of by will. Section 70 cannot, and does not, provide an alternative disposition to section 220 for intestate property in that it gives no guidance to the meaning of the term 'estate' in section 221. Section 70 merely revokes Betti's will insofar as Edward is concerned for lack of '*provision . . . for the spouse* by marriage contract.' (Italics ours.) To determine the effect of such revocation we then turn to the statutes, e.g., sections 201 (community property) and 220 (separate property), which control the disposition of that part of her estate for which she did not provide by will. By its terms section 220 remains 'subject to the limitation of any marriage or other contract,' and under such a contract a spouse may waive his distributional share of decedent's separate property to which he would otherwise be entitled under section 221." (39 Cal.App.3d at pp. 547-548.)

Returning to the sufficiency of an oral prenuptial agreement, the evidence is susceptible to the interpretation that decedent relied upon the oral agreement by virtue of her statement to her granddaughter that the agreement removed her "reluctance" to marry Al, the fact that there was no intermingling of funds during the marriage and the decedent's failure to execute a new will.

Marion relies upon a line of cases holding that a fully executed prenuptial agreement does not have to be in writing to be enforceable and upon the doctrine of estoppel to assert the invalidity of the oral agreement. All of the cases are distinguishable. The principal ones relied upon are *Estate of Dokoozlian* (1963) 219 Cal.App.2d 531 [33 Cal.Rptr. 151], *Estate of Piatt* (1947) 81 Cal.App.2d 348 [183 P.2d 919], and *Freitas v. Freitas* (1916) 31 Cal.App. 16 [159 P. 611]. In *Dokoozlian* the court

held that the trial court erred in rejecting an offer of proof that there was an oral prenuptial agreement between the decedent husband and the surviving wife under which the husband agreed to and in fact did convey certain property and bank accounts to both of them in satisfaction of any claim of the wife to the husband's estate. The court held the testimony was admissible to show a fully performed oral antenuptial agreement which would not be barred by Civil Code section 5134 (formerly Civ. Code, § 178). The court concludes with the statement, "But we are not here concerned with the question of whether respondent is entitled to take against the will by virtue of section 70 of the Probate Code." (219 Cal.App.2d at p. 537.)

In *Estate of Piatt* (1947) 81 Cal.App.2d 348 [183 P.2d 919], prior to the marriage of the parties they orally agreed that all of their property should be held in common. The court held that the oral prenuptial agreement relating to the character of their property after marriage was admissible under the well established doctrine that spouses can orally agree as to the character of their actual title to property notwithstanding the record title. (See *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754 [146 P.2d 905]; *Woods* v. *Security-First Nat. Bank* (1956) 46 Cal.2d 697 [299 P.2d 657].) There was some actual transfer of the properties pursuant to the agreement.

*Freitas* v. *Freitas* (1916) 31 Cal.App. 16 [159 P. 611] held the statute of frauds had no application to an executed oral agreement whereby a deceased husband induced the surviving wife to marry him upon the representation that if she would do so he would make her beneficiary of a life insurance policy. After marriage he designated her as the beneficiary pursuant to the agreement and delivered the policy to her. Later, without her knowledge, he named others as the beneficiaries. The court held the oral agreement was enforceable notwithstanding the provisions of Civil Code section 178 (now Civ. Code, § 5134). (See also *Higgins* v. *Jennings* (1920) 46 Cal.App. 135 [188 P. 847].)

These cases are distinguishable from the case *sub judice*. First, the cause at bench is not concerned with the changing of the character of the ownership of property between husband and wife by oral agreement. Secondly, insofar as any of the above cases refer to full execution of the agreement they involved affirmative acts pursuant to the agreement, such as the transfer of title to assets, whereas in this cause the decedent's activities were wholly passive, that is, a refraining from action. However, it is unnecessary for us to decide whether purely passive conduct can

amount to performance of an oral contract so as to take it out of the requirement for a writing because we decide the case on other grounds. ■ With regard to Probate Code section 70, the oral contract amounted to a waiver of the right to inherit and cannot be said to be a "provision . . . for the spouse by marriage contract" as required by the express language of Probate Code section 70. Thus, the terms of the oral contract in any event did not meet the requirements of section 70.

Marion also argues that Helen is estopped to assert the statute of frauds. ■ Marion can rely upon this theory even though neither he nor Helen was a party to the original contract. (*Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621, 627 [220 P.2d 737].)

"In those cases . . . where either an unconscionable injury or unjust enrichment would result from refusal to enforce the contract, the doctrine of estoppel has been applied whether or not plaintiff relied upon representations going to the requirements of the statute itself." (*Monarco* v. *Lo Greco, supra,* 35 Cal.2d 621, 625.)

The jury and the court found that decedent relied upon Al's oral promise not to share in her estate to her detriment, she having forgone any claim to Al's estate should he have survived her, having not commingled her assets with his and she having not changed her will. (See *Monarco* v. *Lo Greco, supra,* 35 Cal.2d 621, 622—change of position can consist of act of dying without changing will to provide for heirs.)

■ However, following the precise holding in *Estate of Tassi* (1961) 196 Cal.App.2d 494, 504-505 [16 Cal.Rptr. 616], we hold proof of an estoppel would violate the specific terms of section 70 providing that "no other evidence to rebut the presumption of revocation can be received." That case stated: "It is apparent to us that, under this statute, the presumption of revocation which arises when a testator marries after making a will can be rebutted *only* by evidence in support of the specific defenses set forth within the section itself. Since the statute makes no mention of estoppel as a permissible defense, we conclude that claimant's offer of proof was properly denied pursuant to the express wording of the section that 'no other evidence to rebut the presumption of revocation can be received.'" (196 Cal.App.2d at p. 505.) As was said in *Estate of Turney* (1951) 101 Cal.App.2d 720, 722 [226 P.2d 80], referring to section 70, "A party seeking to rebut the statutory presumption of revocation must bring himself within the literal terms of one of

the exceptions." (See also *Corker* v. *Corker* (1891) 87 Cal. 643, 648-649 [25 P. 922].)

■ Clearly, though, no such restriction is contained in Probate Code section 220. Therefore, the theory of estoppel to assert that the contract should be in writing furnishes a legal basis for the court's findings and conclusions that Al (and thus Helen and her husband) was not entitled to inherit an intestate share of the decedent's estate. Accordingly, the decision was not against the law.

Helen and her husband contend there were two errors of law during the trial justifying the new trial order. One was the testimony regarding statements made by the decedent referring to the agreement, and the other was the introduction into evidence of the holographic will of the decedent.

■ Statements made by decedent were admissible as an exception to the hearsay rule to show decedent's reliance upon the agreement and their execution of it under the state of mind exception (Evid. Code, §§ 1250, 1251; *Watenpaugh* v. *State Teachers' Retirement* (1959) 51 Cal.2d 675 [336 P.2d 165]; *People* v. *One 1948 Chevrolet Conv. Coupe* (1955) 45 Cal.2d 613 [290 P.2d 538, 55 A.L.R.2d 1272]) and as a declaration against interest (*Estate of Smead* (1933) 219 Cal. 572 [28 P.2d 348] (disapproved on other grounds in *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892]); *Steinberger* v. *Young* (1917) 175 Cal. 81 [165 P. 432]; *Estate of Weis* (1964) 224 Cal.App.2d 19, 25 [36 Cal.Rptr. 266]).

■ There was no error in admitting the will into evidence. The pretrial order made contents of the will an issue remaining in dispute and Helen first volunteered a statement as to its contents upon examination under Evidence Code section 776. Moreover, the terms of the will were relevant and admissible to show action in conformity with or reliance upon decedent's belief that a contract did exist.

While the court ordinarily has broad discretion in ordering a new trial, when no error has been committed there is no basis for the exercise of discretion. In the present case a new trial was granted for the stated reasons that the decision was against the law and because of errors in law occurring at the trial. It follows that because neither of these grounds was present, there was no basis for exercise of discretion and as a matter of law there was no legal ground upon which a new trial could be ordered.

(*Conner* v. *Southern Pacific Co.* (1952) 38 Cal.2d 633, 637 [241 P.2d 535].) Accordingly, the order granting a new trial must be reversed.

On their cross-appeal from the judgment Helen and her husband urge that the evidence was insufficient to support the judgment. This court is, of course, governed by the oft-repeated substantial evidence rule. (See *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) We have reviewed the record and are satisfied that though the evidence was conflicting it was sufficient to support the verdict, decision and judgment.

The order granting a new trial is reversed, and the judgment is affirmed. Petitioner and appellant Huffman to recover costs.

Hopper, J., and Hanson (P. D.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.