147 Cal.App.3d 590 (1983)
195 Cal. Rptr. 178
Estate of ROBERT K. TURKINGTON, Deceased.
JOAN SANTOS, Petitioner and Respondent,
v.
JANE BUCHANAN, Objector and Appellant.
Docket No. 7655.
Court of Appeals of California, Fifth District.
September 29, 1983.
*591 COUNSEL
Eric G. Helgesen for Objector and Appellant.
McKinney, Enes & Wainwright and James A. Wainwright for Petitioner and Respondent.
OPINION
WOOLPERT, J.
(1a) When a single man adopts one of two adult nieces he has raised since childhood, does the newly acquired daughter become a pretermitted heir, thereby nullifying his previously executed will in which he left his estate equally to his two named nieces? We answer affirmatively because the change in status from niece to child is so momentous that the testator must make a new testamentary disposition absent a clear statement in the existing will that it was executed in contemplation of the change of status.
Jane and Joan are natural sisters who were raised by their uncle, Robert Turkington. On November 26, 1973, Robert executed a will by which he left his entire estate to his sister, directing that the estate be "used for the care, support, maintenance and education of my nieces, JANE BEATRICE *592 TURKINGTON and JOAN ELLEN TURKINGTON." No further limitations or contingencies were mentioned.
Robert's sister died shortly thereafter, triggering the next clause of the will: "If my sister should predecease me, then I hereby give, devise and bequeath all of my estate to my nieces, JANE BEATRICE TURKINGTON and JOAN ELLEN TURKINGTON."
On September 15, 1977, approximately four years after the will was executed, Robert adopted Joan. Both had signed an agreement on August 25, 1977, indicating that they lived at the same place, desired to assume the relationship of parent and child, and sought to subject themselves to "all the duties and responsibilities of that relation."
On January 3, 1982, Robert died without changing his will. Joan was found to be a pretermitted heir and as sole surviving child, takes the entire estate pursuant to Probate Code section 222 (all further statutory references are to the same code). Jane appeals, contending first, that Joan is not a pretermitted heir because she was sufficiently provided for in the will, and second, that Joan's efforts to avoid the consequences of the will provisions amounted to a contest which should deprive her of all but one dollar pursuant to a forfeiture clause.
On first impression it might appear that Jane is right. Both women were close to the testator since they were raised by him. By his will he sought to protect them while his sister survived, and then left them everything he owned in equal shares. He identified them by true name and relationship. It could also appear that his only oversight was not anticipating that one of the nieces would become his child by adoption. Because of the existing family ties, the adoption might appear to be a superficial event. However, we are not permitted to speculate why only one of the nieces was adopted or to measure the importance of the adoption to the testator. In fact, we suspect Robert Turkington knew far less about the effect of the adoption on his will than the attorneys who have submitted the question to us.
We conclude that the trial court properly found Joan was a pretermitted heir entitled to the entire estate. Cases which involve wills executed before adult adoptions were made legal are inapplicable here. In such circumstances the testators were obviously unaware that an adult adoption could occur. Here, however, the will was executed after adult adoptions became valid in California. (Cf. Estate of Pittman (1980) 104 Cal. App.3d 288 [163 Cal. Rptr. 527].)
*593 (2) Public policy discourages the failure to provide for surviving spouses (§ 70;[1]Estate of Cantor (1974) 39 Cal. App.3d 544, 548 [114 Cal. Rptr. 160]), and surviving children (§ 90;[2]Estate of Torregano (1960) 54 Cal.2d 234, 248-249 [5 Cal. Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597]). We disagree with appellant's argument that the spousal relationship has more testamentary significance than the parental one. Each is sufficiently important to invoke the same judicial review.
Because sections 70 and 90 are legislative statements of similar public policies and have strikingly common terminology, we find one case of spousal oversight which is dispositive of this section 90 child pretermission issue. In Estate of Poisl (1955) 44 Cal.2d 147 [280 P.2d 789], the testator made a will seven months prior to his marriage to Emma, using her maiden name and not mentioning the prospective marriage. In this will he left her certain real and personal property. The will also included a disinheritance clause similar to one in the Turkington will, stating an intent to omit "to provide for his heirs living at the time of his death." The disinheritance clause was held inadequate to "constitute a mention of Emma in such a way as to show an intention not to make provision for her."
Then the court discussed the public policy purposes relating to spouses which we feel apply with equal importance to children. It first quoted from Estate of Duke (1953) 41 Cal.2d 509, 513 [261 P.2d 235]: "`And, although a testator need not make provision for such a spouse, he is required to bear in mind the possibility of a subsequent marriage and the serious changes in domestic relations resulting therefrom. The Supreme Court of Georgia said of a similar statute: "The object of the provision is to secure a specific moral influence upon the testamentary act  the moral influence of having in mind a contingent event so momentous as marriage ..., and so deserving of consideration in framing a testamentary scheme." (Ellis v. Darden, 86 Ga. 368, 372 [12 S.E. 652, 653, 11 L.R.A. 51]; quoted with approval in Estate of Meyer, supra, p. 292.)'" (Estate of Poisl, supra, 44 Cal.2d at p. 149.)
*594 The words omitted from the quotation in Ellis v. Darden were "or the birth of a child." We do not find the omission significant. Poisl involved an omitted spouse. In fact, the Poisl court cited with approval Estate of Meyer (1919) 44 Cal. App. 289, 292-293 [186 P. 393], a pretermitted child case in which the full quotation was used.
Finally, the Poisl court examined the language of the will and found it an inadequate expression of a knowledgeable intent to provide for or disinherit the spouse. "It being necessary for the testator to have `in mind' a `momentous' occasion such as marriage, it follows that merely naming or giving a legacy to a person by name, as was done in the case at bar, with no indication that she may be a prospective spouse, is not enough to prevent revocation. That indication must appear on the face of the will, and extrinsic evidence is not admissible to show the testator's intention, at least unless there is some ambiguity. As in the Duke case a legacy to a named person alone, although the named person is later married to the testator, creates no ambiguity; it is merely `noncommittal'...." (44 Cal.2d at pp. 149-150.)
By analogy to Poisl, there is no indication in the present case that the testator contemplated adopting Joan. Although she was mentioned by name in the will, the language is "noncommittal" language. Like marriage, adoption results in "serious domestic changes," as adoption establishes a new parent-child relationship and substitutes the adoptive family relationships for those of the natural family. (§ 257; Estate of Goulart (1963) 222 Cal. App.2d 808, 824 [35 Cal. Rptr. 465].) (1b) Obviously, since Joan was provided for as a niece, she was not intentionally disinherited. As the niece relationship was the one declared in the will, the future status of child was not influencing the testator, if even foreseen. Therefore, we hold that Joan was not provided for as the testator's child and was a pretermitted heir.
The judgment is affirmed.
Andreen, Acting P.J., and Martin, J., concurred.
NOTES
[1] Section 70 provides: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."
[2] Section 90 provides: "When a testator omits to provide in his will for any of his children, or for the issue of any deceased child, whether born before or after the making of the will or before or after the death of the testator, and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate."