### In re SOUTHERN PAC. CO.

District Court, S. D. New York.  May 1, 1928:

Kirlin, Woolsey, Campbell, Hickox & Keating, Charles R. Hickox, and Vernon S. Jones, all of New York City, for petitioner.

Levy & Becker, Joseph Levy, and Harold R. Medina, all of New York City, for claimant.

BONDY, District Judge.  Throughout the trial and in his brief the proctor for claimant, Leonardo Garrafo, contended that Ostrand, the foreman, negligently directed Christofferson, the hookman, to take charge of the winch for the purpose of hoisting the heavy draft which fell and injured the claimant, and that, in directing Christofferson to take charge of the winch, the foreman was acting well within the scope of his authority, and that the negligence of the foreman was in no sense the negligence of a fellow servant of the claimant.

At the time of the trial the proctor for the claimant believed the law to be that the negligence of a fellow workman was a risk assumed by the claimant, and a complete defense to an action against the employer to recover damages for injuries sustained through negligence of a fellow servant. Since then the Supreme Court, in International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, decided that a longshoreman is a seaman and entitled to the benefits of the provisions of the Jones Act (46 USCA § 688), and that, therefore, the fellow servant rule did not apply in case of personal injuries to stevedores.

Neither the claimant nor the petitioner took advantage of the opportunity offered by the court to allow additional testimony to be given as to whether or not claimant sustained his injuries through the negligence of a fellow servant. Both subsequently submitted briefs, the last of which was received February 18, 1928.

That the injuries were sustained through the negligence of the hookman, Christofferson, cannot be doubted, and is not now disputed. The only question, therefore, is whether, while operating the winch during the winchman's absence, Christofferson, the hookman, was an officious volunteer or a fellow servant of the claimant, acting within the scope of his employment.

Christofferson testified that the captain of the lighter had been operating the winch; that the captain left it to get a glass of water; that he (Christofferson) thereupon went to the engine house to operate the winch; that he had very little experience with that kind of a winch; that it was the first time he operated that winch; that he released a friction clutch controlling the drum of the winch before he put on the brake; and that in that manner he lost control of the draft, which fell and injured the claimant.

Testimony was given by Christofferson and some other witnesses, most of whom had made contradictory statements, to the effect that Christofferson had operated a winch from five to ten or fifteen minutes, four or five times, on other occasions when the lighter captain temporarily left the winch, and that on at least one other occasion Ostrand, the foreman, had ordered him to do so.

Ostrand, the foreman, testified that he never knew that Christofferson could operate a winch; that he did not know Christofferson was operating it at the time of the accident; that he never saw Christofferson run a winch; and that usually, when the captain left the winch temporarily, they would wait until he came back.

The evidence was so unsatisfactory and so conflicting that I cannot find that the claimant established by a preponderance of evidence that Christofferson was running the winch at the time of the accident with the knowledge or assent of Ostrand, the foreman.

The captain of the lighter operated the winch in the course of his employment. Christofferson was employed to act as a hookman, and not as a winchman. There is no evidence of any emergency, or any unusual delay, which justified the hookman in operating the winch. When he operated the winch, he acted beyond the scope of his employment. For the acts of his servant, done beyond the course of his employment, the master is not responsible. The Edel (D. C.) 300 F. 731. The measure of the scope of employment is determined by what the servant was employed to perform, and by what, with the knowledge and approval of his master, he actually did perform.

The master's liability, if any, for injury to a servant by the act of a coemployee, rests upon the application of the doctrine of respondeat·superior. To impose such liability, the act or omission of the coemployee, therefore, must have been within the scope of his employment. When the servant acts beyond the scope of his employment, the relation of master and servant does not exist, and the master is not liable for the injuries so caused. Piscrek v. Victor American Fuel Co. (C. C. A.) 263 F. 40; Jackson v. Chicago Railway Co. (C. C. A.) 178 F. 432; St. Louis Southwestern Railway Co. v. Harvey (C. C. A.) 144 F. 806.

The Federal Employers' Liability Act of April 22, 1908 (45 USCA §§ 51–59), abrogates the common-law fellow servant rule, but the gist of the action against the master, notwithstanding the statute, is negligence on the part of the master or his servant while acting within the course of his employment. 39 C. J. 675.

It was not intended by that act to impose liability on the master for the negligence of a servant while acting beyond the scope of his employment, though furthering the interests of his master. Were it otherwise, there would not be any limit to the liability of an employer for the unauthorized act of an employee undertaking to do anything the employee may consider beneficial to his employer.

The claimant lost his leg without any fault on his part. He lost it through the negligence of the hookman, who operated the winch without authority. There is no evidence of any negligence on the part of the

defendant, or any employee of the defendant, while doing any act which he was directed or authorized by the master to do.

I therefore reluctantly reach the conclusion that the petitioner is entitled to a decree exonerating it from liability.