[Civ. No. 580. Fourth Appellate District.—January 14, 1932.]

JOE M. BIESER, Respondent, v. KATHRYN E. DAVIES, etc., Appellant.

Head, Wellington & Jacobs for Appellant.

West & McKinney, L. A. West and B. Z. McKinney for Respondent.

LAMBERT, J., *pro tem.*—The plaintiff Joe M. Bieser brought this action against Kathryn E. Davies, doing business as Owl Taxi Company, for damages for the death of his minor son, Charles J. Bieser, caused by having been struck by an automobile driven by the agent of defendant. A fair statement of the evidence in the record shows:

That Charles J. Bieser, the minor, was of the age of five years and two weeks at the time he was killed. The driver of the taxicab was one Arthur Williams. The impact which resulted in the child's death occurred on South Garnsey Street in the city of Santa Ana, California, at a point about midway of the block, and about the middle or a little to the left of the center of the street. The paved portion of the street is 37 feet wide; the parkway 11½ feet; and there is a sidewalk 5 feet wide next to the parkway. The only thing in the parkway was grass and trees. The trunks of the trees, except two small ones, were 8 inches to 12 inches in diameter, but were trimmed up to 7 or 8 feet. There was nothing to obstruct the vision of the driver of an automobile on the street at the place of the accident. The accident happened about 10 o'clock A. M. and there was no other traffic in the block at the time. Mr. Williams, the driver of the car, testified that there was nothing on the street except some boys on his right-hand side, two out in the street slightly, one on a tricycle, and several more sitting on the curb and parkway. The driver testified that he was watching the boys on the right-hand side and did not see

the boy he struck until after he was struck and his passenger screamed. The driver also testified that he applied his foot-brakes (four-wheel brakes) on the car and afterward jammed the emergency brakes and jumped out of the car. There is some dispute in the evidence as to whether the driver sounded his horn prior to the impact. The driver and his passenger testified he did. Two other witnesses standing 30 feet away did not hear any warning. All the witnesses for defendant, that is the driver and his passenger, testified they did not see the deceased until he was struck. A boy had thrown rocks at the deceased child and some other little boys a short time prior to the accident, but said deceased had not been in the street at any time during the morning prior to the accident. That he ran across the street on to the parkway just north of a small tree, threw a rock at a boy by the name of Juden, and turned and started back to his own side of the street, but before he could get back was struck by the taxicab. The taxicab had swerved to the left and at the time of the impact was a little to the left of the center of Garnsey Street. As to the speed of the taxicab the driver testified that the law was 20 miles and that was what he tried to obey. He also testified that he did not know how fast he was going. The passenger testified she had stated to an officer after the accident that the driver was going at least 25 miles per hour. No witness gave any specific opinion as to speed. The taxicab left skid marks for a distance of from 32 to 33 feet according to a police officer, and a next-door neighbor testified the skid marks extended the distance of a lot 50 feet wide and that the taxicab was about 70 feet from where the deceased child was lying in the street to where the car stopped, and that skid marks showed on the street at a point 15 feet past where the child was lying. The place where the accident happened was in a residence district. The father had warned the boy not to play in the street.

The case was tried by the court sitting with a jury. The jury returned a verdict for the defendant. The plaintiff made a motion for a new trial and the court granted the same. The appellant brings this appeal from the order granting the new trial. The order granting the new trial was general.

Both parties agree that the motion was granted under the specifications of error in law occurring at the trial and excepted to by the plaintiff (subd. 7, sec. 657, Code Civ. Proc.) It is also admitted by appellant and respondent that the new trial was granted because of the giving by the court, at the request of the defendant, the following instruction:

"5. You are further instructed that the employee of the defendant herein, who was driving the automobile, had a right to assume that persons upon the highway would exercise ordinary care and that they would not negligently expose themselves to danger, and that they would exercise ordinary care to ascertain the approach of motor vehicles, and before you hold that any negligence of the defendant was the proximate cause of the injury and damage complained of, you must take into consideration these assumptions which defendant had a right to rely upon and take into consideration the contributory negligence, if any, of the parent or parents or the persons in whose charge the deceased child was at the time of the accident and the contributory negligence of the child, if any, at the time of the accident.

This instruction is erroneous in at least two particulars, the more serious one of which was in nowise covered by other instructions. First, it omits the provision that in order for the defendant to be entitled to the assumption set forth in the instruction, he must be free from negligence himself. Second, the statement in the instruction as to contributory negligence by the deceased or his parents is indefinite and incomplete and it does not cover the question of the necessity of the causal connection between the negligence and the injury, that is, that contributory negligence must be a contributing cause of the injury (*Shipley* v. *San Diego Elec. Ry. Co.*, 106 Cal. App. 659, at 662 [289 Pac. 662]). Appellant admits that the instruction is erroneous, but contends that the giving of it was cured by other instructions, particularly instruction No. 12, given at the request of plaintiff, as follows:

"The right of drivers of automobiles to use public highway is not superior to that of the humblest pedestrian and in the exercise of a common right to the use of the public highways all persons using the same must exert constant

care and caution for the conservation of their correlative rights commensurate with the special hazard which is peculiar to and nowadays ever present in the use of public highways.

"Accordingly the driver of an automobile 'has no right to assume that the road is clear, but under all circumstances and at all times he must be vigilant and must anticipate the presence of others. The fact that he did not know that anyone was on the highway is no excuse for conduct which would have amounted to recklessness if he had known that another vehicle or person was on the highway.' "

The contention is that under the provisions of section 4½, article VI, of the Constitution, which provides that "no judgment shall be set aside, or a new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in the miscarriage of justice", the trial court was without authority to grant a new trial unless there has been a miscarriage of justice. On this appeal we think we must indulge in the presumption that the trial court obeyed this mandate of the Constitution and considered the whole record in the case and decided that the giving of the instruction was prejudicial and did result in a miscarriage of justice. The trial court was in a much better position to judge of the prejudicial effect of the instruction than this court is from a reading of the record. We have, however, as is our duty under the above constitutional provision, considered the whole record, including the evidence. In the case of *Montgomery* v. *Globe Grain & Milling Co.*, 109 Cal. App. 695, at 699 [293 Pac. 856, 858], it was said:

"It is a well-settled rule of law in California that an erroneous instruction given by the court to the jury is an error of law that is considered excepted to as a matter of law. (Sec. 647, Code Civ. Proc.) While an instruction gives the law of the case to the jury, its applicability, and oftentimes its correctness, depends upon the evidence in the case. An instruction should not be considered as merely an abstract statement of a principle of law, but it must relate

to and be measured by the circumstances of the case in which it was given. To determine the question of whether there was any error in giving it frequently requires an examination of the evidence in the case. (*Hamlin* v. *Pacific Elec. R. Co.*, 150 Cal. 776 [89 Pac. 1109]; *Shipley* v. *San Diego Elec. R. Co.*, 106 Cal. App. 659 [289 Pac. 662].) . . . (*Sullivan* v. *Market Street R. Co*, 136 Cal. 479 [69 Pac. 143].)''

The questions for us to determine on this appeal are first, whether or not the evidence shows as a matter of law that the deceased or his parents were guilty of negligence contributing proximately to the accident; second, whether or not the evidence shows the defendant was free from any negligence proximately causing the accident, as a matter of law; and third, whether or not the giving of the instruction heretofore quoted was prejudicial and resulted in a miscarriage of justice.

In a personal injury case the plaintiff is entitled to a jury trial as a matter of right under the Constitution and if the jury is misdirected we think this takes away a substantial right, and unless the erroneous instruction was cured by other instructions, or the verdict rendered was the only verdict which the evidence would support, it would of course be prejudicial (*Mahoney* v. *Atchison, T. & S. F. Ry. Co.*, 101 Cal. App. 652 [281 Pac. 1108]). With reference to the evidence in the case, we believe it is apparent from the evidence set forth herein that a verdict for either the plaintiff or the defendant would be supported by the evidence.

''It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. Even when the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury. (*Johnson* v. *Southern Pac. R. Co.*, 154 Cal. 285 [97 Pac. 520]; *Seller* v. *Market St. Ry. Co.*, 139 Cal. 268 [72 Pac. 1006]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651].)'' The above quotation was cited with approval in the case of *Wynne* v. *Wright*, 105 Cal. App. 17 [286 Pac. 1057, 1058].

We cannot in this court weigh the evidence and determine which side is the stronger when there is substantial evidence

in the record which would support a finding either way. (*Ricks* v. *Adorni,* 86 Cal. App. 284, at 286 [260 Pac. 815].)

█ We now come to the question of whether or not the instruction admitted to be erroneous was cured by other instructions. We have examined all the instructions in the record and do not find any which take the place of the omitted element in this instruction number 5 as to the necessity for defendant to be free from negligence to be entitled to rely on the assumptions therein contained, and none has been pointed out to us except the instruction number 12 heretofore quoted. It is true, as contended by appellant, that the instructions must be considered as a whole. It was said in *Hayden* v. *Consolidated Min. & Dredging Co.,* 3 Cal. App. 136, at 139 [84 Pac. 422, 423]:

"In construing the charge of the court, it must be viewed in the light of common understanding, and the practical administration of justice should not be defeated by a too rigid adherence to close and technical analysis of the whole or any part thereof. (*People* v. *Alsemi,* 85 Cal. 435 [24 Pac. 810]; *People* v. *Bruggy,* 93 Cal. 476 [29 Pac. 26]; *Hanson* v. *Stinehoff,* 139 Cal. 173 [72 Pac. 913]; *Thomas* v. *Gates,* 126 Cal. 8 [58 Pac. 315]; *Stephenson* v. *Southern Pac. R. Co.,* 102 Cal. 150 [34 Pac. 618, 36 Pac. 407]; *People* v. *Gibson,* 106 Cal. 474 [39 Pac. 864].) 'Jurors may be assumed to have ordinary intelligence and good sense.' (*Ballou* v. *Andrews Banking Co.,* 128 Cal. 567 [61 Pac. 102].) This being true, it follows that the crucial test to be applied in solving the problem before us must be whether a man of ordinary intelligence reading the charge intended for his guidance would be unable to ascertain its meaning as a whole, by reason of inherent contradictions creating confusion and doubt in his mind touching his duty as a juror."

Taking the instruction of the court in the case at bar and testing it by the above rule, we cannot say that the trial court was not justified in granting a new trial. The most that can be said of instruction number 12 is that while it is a correct statement of the law, it is wholly contradictory to instruction number 5 as to the duty of the driver of an automobile in the use of the public highways of the state. It has been held that conflict between instructions in essential particulars is ground for reversal (*Haight*

v. *Vallet*, 89 Cal. 245 [23 Am. St. Rep. 465, 26 Pac. 897];
*Hayden* v. *Consolidated Min. & Dredging Co.*, *supra*). The
instruction is a general instruction on the correlative rights
and duties of drivers of automobiles and pedestrians in the
use of the public streets. The instruction number 5 com-
plained of is a specific instruction on the rights of the
driver of the car involved in the accident and would un-
doubtedly make a deeper impression on the minds of the
jury. The trial court evidently considered that the giving
of this instruction was an error of law and prejudicial to
the respondent. We find no reason to disturb the order.
In *Chambers* v. *Farnham*, 39 Cal. App. 17, at 23 [179 Pac.
423, 426], it is said: "It is only in rare instances and upon
very strong grounds that an appellate court will set aside
an order granting a new trial." (See, also, *Follett* v.
Brown, (Nov. 5, 1931) 118 Cal. App. 198 [5 Pac. (2d) 51].)
The order granting a new trial is affirmed.

Barnard, P. J., and Marks, J., concurred.