[S. F. No. 16950. In Bank. Feb. 10, 1944.]

O. D. ADAMS, Appellant, v. AMERICAN PRESIDENT LINES, LTD. (a Corporation), Respondent.

682

John J. Taheny for Appellant.

Treadwell & Laughlin, Robert A. Grantier and Raymond M. Farley for Respondent.

SHENK, J.—The plaintiff, a seaman, sought to recover damages for the alleged negligence of his employer, under the Federal Employers' Liability Act (45 U.S.C.A., secs. 51-59), which is made applicable to seamen by the Jones Act (46 U.S.C.A., sec. 688). The jury returned a verdict in favor of the plaintiff in the sum of $1,750. The trial court granted the defendant's motion for a new trial. The plaintiff appealed from the order.

The order granting a new trial specified, as the sole grounds therefor, errors of law occurring at the trial and excepted to by the defendant. In the absence of the specification of insufficiency of the evidence to support the verdict, we are precluded from considering the question whether the evidence was sufficient to sustain the verdict unless it was without conflict and insufficient as a matter of law. (Code Civ. Proc., sec. 657; *Pitt* v. *Southern Pac. Co.*, 121 Cal.App. 228 [9 P.2d 273]; *Springer* v. *Sodestrom*, 54 Cal.App.2d 704 [129 P.2d 499].) The evidence was conflicting on the issue of the employer's negligence, and it cannot be said to be insufficient as matter of law. Under the rule, therefore, we must accept the following facts as fully supported by the evidence:

The plaintiff, 39 years of age, was employed as a seaman on defendant's passenger vessel, The President Pierce, making a trip from San Francisco to the Orient and return between April 4 and May 26, 1941. On May 22d, on the return voyage, while acting in the course of his employment, the plaintiff was ascending a stairway from D deck to C deck with a case of canned goods on his right shoulder. He was holding the railing with his left hand. At the fourth or fifth step from the top his foot slipped on an orange peel which

he did not observe until later, and he fell forward. He extended his right hand to guard his face from contact with the stair, and in doing so the case of canned goods fell on his right hand, severely injuring two fingers, one of which was almost severed. Only officers and members of the crew used that particular stairway, which was inside the ship and inaccessible to passengers, or to anything which could or might have been discarded by passengers from B deck. The stairway was not fully lighted. The top light was placed on C deck about five feet from the entrance to the stairway, and the rays from that light and from the light near the bottom did not shine directly on the stairs where the plaintiff fell. There was evidence that it was a daily custom for members of the crew to foregather on C deck about or near the stairway after meals and, while standing around talking, to eat oranges taken from a pan of fruit placed in the messroom at meal times for their consumption. It was a common thing for them to discard the peels of the fruit on the deck or to aim for but miss the garbage receptacle maintained for their use on C deck near the head of the stairway. It was not unusual for the plaintiff and other members of the crew to pick up fruit peels, cigaret butts and the like from C deck near or on the stairway and place them in the garbage receptacle. There was no direct evidence, however, as to how the orange peel on which the plaintiff slipped happened to be on the stairway.

██ Recovery of damages by an employee under the Jones Act is predicated on negligence of the employer. ██ The Federal Employers' Liability Act abrogates the common law rule that an employee must bear the risk of injury or death through the ·fault or negligence of a fellow servant, and applies the principle of *respondeat superior* to impose liability on the employer. (*Jamison* v. *Encarnacion*, 281 U.S. 635 [50 S.Ct. 440, 74 L.Ed. 1082].) Before the plaintiff may recover damages for the negligence of the employer's servant, he must show that the act of negligence was committed within the scope of the servant's employment. ██ The master is not liable for injury to a seaman arising from the negligence of a servant acting beyond the scope of his employment. (*In re Southern Pac. Co.*, 30 F.2d 723.)

On the hearing of the motion for a new trial the defendant's only contention was, and it is now contended, that the trial court committed prejudicial error in omitting from certain "formula" instructions the element that the negligent

act of the member of the crew causing the orange peel to be on the stairway must have been committed in the course of his employment. In granting a new trial the court was apparently of the opinion that the omission was error which resulted in a miscarriage of justice. (Sec. 4½, art. VI, Cal. Const.)

The court by separate instructions limited the plaintiff's right to a recovery only in case the negligent act of a crew member was committed within the scope of his employment. But it is unnecessary in this case to consider whether the omission from the criticized formula instructions was cured by such other instructions.

It has been said that an appellate court will rarely disturb an order granting a new trial and then only on a clear showing of abuse of discretion. (*Scott* v. *Times Mirror Co.*, 178 Cal. 688 [174 P. 312]; *Campanella* v. *Campanella*, 204 Cal. 515, 522 [269 P. 433].) If, applying the claimed erroneous instructions to the facts, it be disclosed that no error was committed, the order granting a new trial was improper. (*Springer* v. *Sodestrom, supra.*) Such will be the result here if it must be said that, under the evidence presented, the fellow employee, when he discarded the orange peel on the stairway, was acting within the scope of his employment. The question of what acts are within the scope of the employment is one of law.

The problem may be resolved by the application of what is considered within the scope of employment when the actor in that employment is the applicant for redress or compensation for injuries arising out of the employment. Cases under workmen's compensation laws are typical.

In *Whiting-Mead Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518], this court approved a rule derived from the consideration of other decisions and which was stated to be: "Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . That such acts will

be done in the course of employment is necessarily contemplated, and they are inevitable incidents.'' The rule was applied in that case to a situation where the employee temporarily ceased his labor and struck a match for the purpose of lighting a cigaret which ignited a turpentine saturated bandage on his hand.

The rule that necessary incidents of life do not necessarily suspend the employer-employee relationship has been applied in cases where the employee was required to sleep or otherwise remain on the premises of the employer. In *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 P. 744], this court stated the general rule to be that when the contract of employment required that the employee sleep on the premises of the employer, he should be considered to be performing services growing out of and incidental to the employment during the time he was on the premises of the employer; and determined that the rule applied where ''the employer places the employee in such circumstances that his time is never his own, where he has no discretion as to where he shall sleep and where he shall eat. Under such circumstances the workman must be considered in the employ of the employer all of the time, or at least performing a service which is incidental to the employment he is engaged in.'' In *Union Oil Co.* v. *Industrial Acc. Com.*, 211 Cal. 398 [295 P. 513], the rule was said to apply even though the employee was not at work at the time.

In *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal. App.2d 567 [99 P.2d 1089], the employee was required to live on the employer's premises. She suffered injury while she was in her own room engaged in shortening a street dress she was wearing. It was determined that the injuries occurred in the course of and arose out of the employment. Many other cases to similar effect were reviewed by the court in that case. In *Zurich General Accident & Liability Ins. Co.* v. *Brunson*, 15 F.2d 906, the employee was eating luncheon on the side of a precipitous mountain where he had been engaged in clearing land for a lumber company. It was held that an injury suffered during that period of relaxation was compensable as an injury sustained in the course of the employment. The court said: ''Necessary incidents of life enter into the employment and do not suspend the relation . . ., including eating lunch on the premises. . . .''

That the foregoing principles apply to a seaman while

on the vessel on which he is employed becomes obvious. His employment requires him to spend his entire time on the vessel while it is at sea. His time is never wholly his own. On his hours off he is subject to call to duty in an emergency. Necessary incidents of life, therefore, such as sleeping, eating, washing, etc., are contemplated to be within the scope of the employment. It has been said that the Federal Employers Liability Act must be construed liberally to fulfill the purposes for which it was enacted. (*Jamison v. Encarnacion, supra.*) In compliance with the injunction of liberal construction, the foregoing principles have heretofore been applied in defining what is the scope of employment intended by the act.

In *States S. S. Co.* v. *Berglann,* 41 F.2d 456, a seaman erossed the well deck to get water to wash with after the day's work. He was injured on his return. The court said: "The employment of a seaman includes not only the performance of the physical tasks required of him, but also includes the performance of such ordinary tasks for his own comfort and convenience as are incident to and necessarily connected with the employment."

In *Meyer* v. *Dollar S. S. Line,* 49 F.2d 1002, it is stated that a seaman is in the service of the ship, that is, in the line of duty, at all times he is subject to call, even when off duty. The court noted an exception to the rule when the seaman engaged in good natured scuffling and, by his own volition, created an extraneous circumstance.

In *Wong Bar* v. *Suburban Petroleum Transport, Inc.,* 119 F.2d 745, it was said that a seaman is in the course of employment until he has left the place of employment.

It follows that in the present case the eating of fruit and disposal of the peelings on the deck were acts within the scope of the seaman's employment as matter of law unless the jury could find from the evidence that the throwing of the orange peel was the result of some extraneous circumstance.

The defendant makes two contentions bearing upon the claimed extraneous nature of the occurrence. It is contended that the act of throwing the peel on the deck was contrary to regulations and in disobedience of orders. If that was so, the fact did not change the character of the act as one within the scope of employment. The rule is that an employer is liable for acts of his employee within the scope of the employment notwithstanding they are done in

violation of rules, orders or instructions. (*Ruppe* v. *City of Los Angeles,* 186 Cal. 400, 402 [199 P. 496]; *Johnson* v. *Monson,* 183 Cal. 149 [190 P. 635]; 35 Am.Jur., p. 993, sec. 559.)

The defendant's second contention in this respect is that the omission of the disputed element from the quoted instructions deprived it of the benefit of any inference which the jury might have drawn that the presence of the peel on the stairway was the result of malice or scuffling, and that the omission was therefore prejudicial. As we have noted, there was no direct evidence as to how the orange peel came to be on the stairway. The plaintiff met the requirements of proof on his part when he introduced evidence from which the jury properly could infer that the presence of the orange peel was due to an act of negligence within the scope of employment. He was not required to negative any defense by which the defendant might successfully rebut his prima facie case. Rather it was for the defendant to go forward with evidence tending to prove that the presence of the orange peel was due to the perpetration of some act of malicious mischief or good natured scuffling which would take the act outside the scope of the employment. (*Runkle* v. *Southern Pacific Milling Co.,* 184 Cal. 714, 721 [195 P. 398, 16 A.L.R. 275]; *Kruse* v. *White Brothers,* 81 Cal.App. 86 [253 P. 178].) No such evidence was introduced, and in the absence thereof, the evidence may not be said to support a reasonable inference that the act was without the scope of the employment.

Standing alone as a statement of an abstract principle of law, it is true that the instructions complained of omitted an element essential to recovery under the Jones Act. But while an instruction gives the law of the case to the jury, its applicability and correctness cannot be divorced from the evidence in the case. The courts will not consider an instruction as merely an abstract statement of legal principles. (*Hamlin* v. *Pacific Elec. R. Co.,* 150 Cal. 776 [89 P. 1109]; *Bieser* v. *Davies,* 119 Cal.App. 659 [7 P.2d 388].) It must be measured by the circumstances of the case in which it was given. So measured in the present case the conclusion follows that the omission in the instructions complained of was not error, or, if error, was not prejudicial as matter of law, and that the trial court abused its discretion in granting the defendant's motion for a new trial.

The order granting a new trial is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.