[Civ. No. 17869. Fourth Dist., Div. Two. June 7, 1978.]

In re the Marriage of PHYLLIS L. and MILTON M. BEILOCK.
PHYLLIS L. BEILOCK, Respondent, v.
MILTON M. BEILOCK, Appellant.

**COUNSEL**

Richard A. Daily for Appellant.

Launer, Chaffee, Ward & Orman and Walter B. Chaffee for Respondent.

## OPINION

McDANIEL, J.—The ruling of the trial court here under review is an order granting a motion for a new trial. The "trial" which preceded the motion noted was not the type which usually precedes such motions. Following a judgment entered about five years earlier in a dissolution case, the wife obtained a writ of execution for claimed arrearages in both child and spousal support payments. After levy of the writ which caught $6,000, roughly half the amount specified on the face of the writ, the husband moved to quash the writ. His motion was granted, and then wife moved for a new trial. The wife's motion was also granted, and that ruling led to this appeal. In our view, the order of the trial court granting the new trial was not an abuse of discretion, and so it is affirmed.

### PROCEDURAL BACKGROUND

Husband and wife obtained a final decree of dissolution in 1970. A marital settlement agreement had earlier been made part of the interlocutory judgment. That agreement provided that husband would pay wife $100 per month spousal support for a period of six years and would pay $150 per month respectively for the support of each of the couple's two children, to continue for each child until he or she reached age twenty-one. Husband ceased making spousal support payments in August 1971, and child support payments in September 1972. As a consequence, in December 1975 wife sought and obtained a writ of execution in the amount of $11,575 plus interest to cover the arrearage. The levy of execution was made and resulted in seizure of $6,000, leaving $5,575 plus interest unsatisfied. On December 3, 1976, husband moved to quash the writ and set aside the levy that had resulted in seizure of the $6,000. The motion was granted by minute order entered January 3, 1977. On January 14, 1977, wife noticed a motion to reconsider for hearing on February 15, 1977. A formal written order quashing the writ was made on February 1, 1977. Then on February 8, 1977, wife moved for a new trial on the grounds that the evidence was insufficient to justify the order quashing the writ and that the decision implicit in such order was against the law. Pursuant to stipulation, both motions were heard on February 15, 1977. The court denied the motion to reconsider, but granted the motion for a new trial. The minute order by which these rulings were made did not specify either any grounds or any reasons for granting the new trial. Husband appealed.

ISSUES, DISCUSSION AND DISPOSITION

Husband contends that the order granting the motion for a new trial must be reversed because: (1) the court was without jurisdiction to hear the motion for the reasons that the law forbids granting a new trial following the granting of a motion to quash a writ of execution, and that the notice of intention to move for new trial was not timely made; (2) the court failed to specify the ground(s) and reason(s) for granting the motion for new trial; and (3) on the merits there was no legal ground upon which to grant the motion.

## 1. PROPRIETY OF THE NEW TRIAL MOTION

■ Amplifying his contentions, husband asserts that the law forbids a new trial following the granting of any motion. His authority for this proposition is the 1917 Supreme Court decision, *Gray* v. *Cotton,* 174 Cal. 256 [162 P. 1019]. In *Gray,* the plaintiff made a statutory motion to have judgment entered in his favor against the surety for defendants. The court had before it only a question of law. That question was whether, upon the undisputed facts, plaintiff was entitled to judgment against the surety. The trial court agreed that he was. After judgment was entered accordingly, the surety made a motion for a new trial, and the motion was denied. Plaintiff appealed from the judgment and from the denial.[1]
■ In upholding the trial court's decision, the Supreme Court referred to the definition of a new trial provided in Code of Civil Procedure section 656[2] and opined that "[i]t is well settled that proceedings for new trial do not lie to secure the re-examination of the decision of a motion. [Citations.]" *(Id.,* at p. 258.) According to the court in *Gray,* there were three bases for the "rule" that a new trial cannot be had after a ruling on a motion. Those bases were: (1) a new trial may only be had on an issue of fact, and motions try issues of law (as was the case in *Gray*) or issues of fact and law; (2) a new trial can only follow a "trial"; and (3) a new trial can be had only on those issues which are raised by ordinary pleadings, i.e., by complaint and answer.

The first basis, that a new trial may be granted only on issues of fact, was eliminated in *Carney* v. *Simmonds,* 49 Cal.2d 84 [315 P.2d 305]. In

---

[1] We observe that the issue raised by husband here would have been better presented in *Gray* if the trial court had *granted* the motion for a new trial.

[2] Section 656 of the Code of Civil Procedure reads: "A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee." All further statutory references are to the Code of Civil Procedure unless otherwise specified.

*Carney,* the defendants moved for judgment on the pleadings because the complaint failed to state a cause of action. The motion was granted and judgment for the defendants was entered. Plaintiff moved for a new trial, and the motion was granted. Defendants contested the propriety of the trial court's ruling.

*Carney* squarely faced the procedural issue, because the motion for a new trial had been *granted.* In its opinion, the Supreme Court referred to sections 656 and 590 (the same sections that served as the basis for the court's views expressed in *Gray*), noting that those sections had, in past decisions, been employed to prevent the granting of new trials following judgments of dismissal, judgments on the pleadings, judgments on an agreed statement of ultimate facts and default judgments, all of which involve issues of law or issues of fact and law. However, the court stated that sections 656 and 590 ". . . must be read and construed in conjunction with . . . section 657 of the Code of Civil Procedure." (*Id.,* at p. 90.) Section 657 provides for a new trial following any verdict or "other decision" when, inter alia, the evidence is insufficient to justify the decision, or the decision is against law or an error in law occurs at the trial. The court then further stated, ". . . there is no less reason why the trial court should have a second chance to reexamine its judgment where issues of fact are involved than where issues of law or law and fact are decided." (*Id.,* at p. 90.) The court concluded that a motion for new trial was appropriate in the four situations mentioned above, as well as after judgments of nonsuit and judgments on directed verdicts. Thus, because of the holding in *Carney* there now exists nothing in the law to prohibit granting a new trial to hear any issues of *law* or fact presented by husband's motion to quash.

■ That the foregoing interpretation of *Carney* is correct is confirmed by *Greene v. Superior Court,* 55 Cal.2d 403 [10 Cal.Rptr. 817, 359 P.2d 249], where it is said, "[a]lthough the trial court can correct its own inadvertence or clerical error [citation], or set aside a judgment or order obtained by extrinsic fraud [citation], it can correct judicial error only on a motion for new trial (*Carney v. Simmonds,* 49 Cal.2d 84, 90-91 . . . ." (*Id.,* at p. 405.)

■ Referring again to the statutory conditions already noted in section 656 and that it is only possible for there to be a *new trial* if there has first been a *trial,* husband in his petition for rehearing argues that the availability of a motion for a new trial is limited to "the ordinary garden variety civil case . . ." The concept of a "garden variety" case is difficult to

define as urged by husband, for precedent prescribes a broad concept of the term "trial." ■ As defined in *Adams* v. *Superior Court,* 52 Cal.2d 867 [345 P.2d 466], "[a] 'trial' is the examination before a competent tribunal, according to the law of the land, of questions of fact or of law put in issue by pleadings, for the purpose of determining the rights of the parties. [Citations.]" (*Id.,* at p. 870.) ■ *Adams* involved an issue arising under section 583, but we see no reason why this definition of a "trial" for purposes of that section should not be applicable in the case now before us.

Here, in his motion to quash the writ of execution, husband contends that wife, as a matter of law and fact, is not entitled to the relief she seeks in her writ of execution. Although the pleadings in this situation cannot fairly be characterized as "garden variety" pleadings, i.e., a complaint and answer, they can easily be compared to the usual pleadings which precede a trial.

Wife's petition for the writ of execution can be analogized to the complaint because, therein, she states a claim for relief. Husband's motion to quash the execution may be viewed as his "answer" to the claim for relief. A decision on the merits of the opposing claims was reached after presentation of evidence and legal argument. Thus, in light of the broad definition of "trial" set forth in *Adams,* the hearing in the case here on December 3, 1976, which was the subject of the minute order of January 3, 1977, was clearly a trial. Those proceedings were held under the law of the land, the court considered issues of fact and law raised by "pleadings," and, as to those issues, it determined certain rights of the parties. Consequently, there was a trial. (*Adams* v. *Superior Court, supra,* 52 Cal.2d 867, 870.)

■ Husband next contends that the court was without jurisdiction to hear the motion for a new trial because the notice of intention to move for a new trial prescribed by section 659 was not timely filed. ■ It is well settled that a timely filing of the notice of intention to move for a new trial is jurisdictional, and the time cannot be extended or waived by the parties. (*Douglas* v. *Janis,* 43 Cal.App.3d 931, 936 [118 Cal.Rptr. 280].)

■ The jurisdictional period of time under section 659 is 15 days from the date of mailing the notice of entry of judgment per section 664.5, or 15 days from service upon the others by any party of written notice of entry of judgment, or within 180 days of entry of judgment, whichever is earliest. The latter cited section states that "[p]romptly upon

entry of judgment in a contested action or special proceeding ... the clerk of the court shall mail notice of entry of judgment to all parties who have appeared in the action or special proceeding .... For purposes of this section 'judgment' includes any judgment, decree or signed order *from which an appeal lies.*" (§ 664.5; italics added.)

Husband points out, because there was no "judgment" in the customary sense entered in connection with the granting of his motion to quash, that the clerk necessarily did not send a notice of entry of judgment under section 664.5. However, pursuant to rule 204, California Rules of Court,[3] the clerk on January 4, 1977, *did* send to both parties a copy of the minute order which granted the motion to quash. Based upon this action, and equating the execution of his duty by the clerk under rule 204 to the duty of the clerk under section 664.5, husband argues that the time within which the wife could file her notice of intention to move for a new trial began to run with reference to the mailing by the clerk on January 4, 1977.

Wife's rejoinder is that there was a formal order quashing the writ of execution signed by the court on February 1, 1977, and that that is the date from which the time to file began to run. Husband's response to this is that the minute order of January 3, 1977, represents the true disposition of the cause by reason of rule 2(b)(2), California Rules of Court.[4] We would agree that there necessarily must be a symmetry between the calculation of the time to appeal and of the time to give notice of intention to move for a new trial as urged by husband. However, on the facts and procedures of this case, it is our view that the minute order of January 3, 1977, was not appealable because it did not embody the relief sought by the husband.

The same question in a different factual context was before this court in *Hadley* v. *Superior Court*, 29 Cal.App.3d 389 [105 Cal.Rptr. 500]. In

---

[3]Rule 204, California Rules of Court in pertinent part reads, "[w]hen the court rules upon a demurrer or motion or makes an order in a matter which it has taken under submission, the clerk shall forthwith notify the parties of the ruling or order. Such notification shall not constitute service of notice. The failure of the clerk to give such notification shall not extend the time provided by law for performing any act."

[4]Rule 2(b)(2), California Rules of Court reads: "The date of entry of an appealable order which is entered in the minutes shall be the date of its entry in the permanent minutes, unless such minute order as entered expressly directs that a written order be prepared, signed and filed, in which case the date of entry shall be the date of filing of the signed order."

that case, in a proceeding for administrative mandamus, the trial court had by a minute order denied the petition after issuing the alternative writ. Petitioner before this court had sought entry of judgment in the court below and his motion was denied. He then sought relief from us by means of a petition for writ of mandate. In commenting upon this aspect of the case, Justice Kaufman said, "[w]e are, of course, not concerned in this proceeding with the merits of the trial court's decision denying administrative mandamus. The question before us is whether the proceeding below has been properly terminated by the rendition and entry of a judgment. The answer is that it has not." (*Id.,* at p. 392.) The opinion goes on to point out that in certain kinds of cases the minute order is dispositive of the issue and that an appeal can be taken therefrom as contemplated by rule 2(b)(2). However, in other instances a formal judgment, "a separate piece of paper," is necessary by reason of the nature of the proceeding involved. In *Hadley,* it was held that a proceeding in administrative mandamus could not be concluded simply by a minute order and we issued a peremptory writ directing the respondent superior court to render and enter a judgment. (*Hadley* v. *Superior Court, supra,* 29 Cal.App.3d 389, 396.)

Thus it is here. In the instance of a writ of execution, there necessarily has to be "a separate piece of paper" signed by the court actually quashing the writ of execution. This follows, for it may be necessary to record a certified copy or as here to deliver a certified copy to the levying officer as his authority to release the funds which had been seized. As a consequence, it was the formal order of February 1, 1977, which represented the judicial act in which the relief sought by husband was memorialized and embodied.

Based upon this characterization of the procedural events which occurred, the wife had until February 16, 1977, to give notice of her intention to move for a new trial. As appears from the augmented record on appeal, wife gave notice of intention to move for a new trial on February 8, 1977, and so such filing was timely.[5]

---

[5]Again, where the proceeding is a motion to quash a writ of execution, if the ruling of the trial court were to *deny* the motion, then, applying the reasoning of *Hadley,* the minute order denying the motion would be dispositive. The moving party would have an appeal from that minute order, and the time within which to do so would begin to run from the date of such minute order.

## 2. Efficacy Of The New Trial Order As Such

 Next, husband contends that the granting of the motion for a new trial must be reversed because the trial court failed to specify the grounds and reasons for granting the motion as required by section 657. The trial court did, indeed, fail to specify either any ground(s) or any reason(s) upon which it granted wife's motion. The text of the minute order reads, "Motion to reconsider denied. Motion for new trial granted."

Husband relies principally upon *La Manna v. Stewart*, 13 Cal.3d 413 [118 Cal.Rptr. 761, 530 P.2d 1073], for the proposition that a failure to specify reasons in the order granting a motion for a new trial renders the order void. In taking this position, husband seizes on the language of the opinion wherein it is stated, "[i]n adopting section 657 the Legislature has expressly directed that the court 'prepare,' 'sign,' and 'file' the written specification of reasons[,] [and] . . . these statutory requirements . . . [are] mandatory and jurisdictional." (*Id.,* at p. 422.)

 In *La Manna* there was a single ground upon which the motion was based, and that was insufficiency of the evidence to justify the verdict. After the motion was heard, the trial court recited orally at length its reasons for granting the motion. However, the written minute order stated only that the " '[m]otion is granted. Verdict is vacated on all the issues. The court shall file its specifications [of grounds and reasons] . . . .' " (*Id.,* at p. 417.) Despite this recital on December 23, 1971, the court did not file its written specification of reasons until February 18, 1972, at which time it undertook to amend nunc pro tunc the minute order of December 23, 1971, by adding thereto a verbatim transcription of the oral statement of reasons given at the time the ruling was made.

Section 657 provides in pertinent part: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated. . . . [¶] The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk." Based upon the foregoing language and where only the single ground of insufficiency of the evidence was relied upon by the party moving for the new trial, *La*

*Manna* held, because the order lacked a specification of reasons and because none had been filed within 10 days of the ruling, that the order was void. Interestingly, to avoid a miscarriage of justice it also reversed the main judgment, and so the result of the case as a practical matter was the same as if the new trial order had been upheld.

However, section 657 concludes with a paragraph which begins with the admonition that "[o]n appeal from an order granting a new trial the order *shall be affirmed* if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons . . . ." (Italics added.) Such admonition brings us to a consideration of *Treber* v. *Superior Court,* 68 Cal.2d 128 [65 Cal.Rptr. 330, 436 P.2d 330]. The opinion in that case was written by Justice Mosk who also wrote the opinion in *La Manna.* In commenting upon the portion of the statute just quoted, he says, "[u]nder this rule we have deemed ourselves bound to affirm a new trial order upon an error in law which was not only not the ground specified by the trial judge, but was apparently not even within his contemplation at the time of his ruling. [Citation.] It follows that a failure of the trial judge to specify *any* ground—and *a fortiori* any reason for a ground actually stated—cannot be held to render the order void from its inception. The reviewing court remains under an express statutory duty to affirm such an order if the record will support any ground listed in the motion." (*Treber* v. *Superior Court, supra,* 68 Cal.2d 128, 133-134.)

In the case before us there were two grounds urged in support of the motion. Besides insufficiency of the evidence, wife also argued to the trial court that the order quashing the writ was "against the law." Thus, on the details of the procedural context, we have a case which fits precisely within the *Treber* language quoted. There were neither grounds nor reasons stated in the order, and there was another ground listed in the motion besides insufficiency of the evidence.

How are *La Manna* and *Treber,* both written by Justice Mosk exactly seven years apart, to be reconciled? To do so requires a realization that the Legislature in drafting section 657 had at least two different objectives in mind. Generally, one objective is to facilitate a meaningful appellate review of orders granting new trials primarily where the ground is either that the evidence is insufficient to justify the verdict or that the damages are excessive or inadequate. The second objective, assuming the given order is defective with reference to the first objective, is to prevent

injustice by extending the scope of appellate review to any ground listed in the motion and *not* relied upon by the trial court.

In terms of the sequence of the various provisions of the statute, after the several grounds are stated, it then directs, when a new trial is granted that ". . . the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." (§ 657.) The next paragraph then deals specifically with the evidence and damages grounds, a matter which is also dealt with in the last paragraph wherein it is stated, "the order shall not be affirmed upon the ground of the insufficiency of the evidence . . . or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion . . . ." (§ 657.) It then goes on to provide, with reference to an order made on either of these two grounds, that "it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons . . . ." (§ 657.)

All of the provisions just noted deal with the effectiveness of memorializing the trial court's action in the form of its purported efforts to grant a new trial. This view is supported by a comment in footnote 9 in *La Manna* which states, "[i]n section 657 the Legislature has said to the trial courts, 'You must follow certain specific steps in granting a motion for new trial' . . . ." (*La Manna v. Stewart, supra,* 13 Cal.3d 413, 423.) According to the holding in *La Manna,* along with those in *Mercer v. Perez,* 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315]; *Scala v. Jerry Witt & Sons, Inc.,* 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864]; *Miller v. Los Angeles County Flood Control Dist.,* 8 Cal.3d 689 [106 Cal.Rptr. 1, 505 P.2d 193]; and *Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51 [107 Cal.Rptr. 45, 507 P.2d 653], to note chronologically a few of the cases, the orders granting new trials were all reversed because of the various failures to include within the text of the order those things which section 657 requires. To reiterate the first of the legislative objectives of section 657 noted above, which such orders frustrated, it was to provide the basis for an orderly and meaningful appellate review of what the trial court did, i.e., its mental processes. Each of the authorities just cited elaborates variously on the nature of and reasons for this objective.

However, suppose the trial court either fails to state its grounds and reasons effectively, or, as in the case before us, says absolutely nothing at all. Is that the end of it? Husband, relying on *La Manna* says that it is. In his letter brief on rehearing he says, "[*La Manna*] is inapplicable to the

precise situation before this Court . . . if, and only if, there is read into the Supreme Court's opinion in *La Manna* at the end of the above-quoted statement on page 422[6] the qualifier that the preparation, signing, and filing is jurisdictional only when the sole ground upon which the motion for new trial is brought is the insufficiency of the evidence. There is nothing in *La Manna* to indicate that its holding was so limited."

We agree that *La Manna* was not intended to be thusly limited. However, that is not the end of efforts to apply the statute. True, the trial judge is admonished to state his grounds and reasons, whatever they are, and this is not limited to the evidence and damages grounds. But if the text of the order made does not fulfill the statutory requirements, then the reviewing court, according to other provisions of the statute, *must affirm the order* if it should have been granted on some other ground stated in the motion. This is the square holding of *Treber.*

In other words, referring again to the legislative objectives of section 657, the review of orders granting new trial is twofold. The content of the order is measured against certain statutory requirements. If it passes muster, that is the end of the task of review. However, if it does not, then the review must go a step further and test the record as to any other ground stated in the motion.

This was the law even before codified in the 1965 amendment to section 657. We refer again to *Treber.* "In adjudicating an appeal from a new trial order predicated on . . . any ground other than insufficiency of the evidence or excessive or inadequate damages, the reviewing court is governed by the fourth paragraph of the 1965 amendments to section 657: codifying the common-law rule in this respect (see *Kauffman* v. *Maier* (1892) 94 Cal. 269, 275-277 [29 P. 481, 18 L.R.A. 124], followed in many cases), the statute declares that on such an appeal 'the order shall be affirmed if it should have been granted upon *any* ground stated in the motion, *whether or not specified* in the order or specification of reasons' (italics added). [Fn. omitted.] This court observed in *Kauffman* that 'A contrary rule might work great injustice,' explaining (at pp. 276-277 of 94

---

[6]The "above-quoted" statement referred to by husband reads: "In adopting section 657 the Legislature has expressly directed that the court 'prepare,' 'sign,' and 'file' the written specification of reasons. It is not for us to decide that only the first of these three judicial acts really matters. [Fn. omitted.] On the contrary, in *Stevens* (9 Cal.3d at p. 63) we found it 'highly significant' that 'the mandate of the statute is that the specification of reasons be in *writing, signed* by the trial judge and *filed with the clerk.'* (Italics in original.) Each of these statutory requirements, accordingly, is mandatory and jurisdictional." (*La Manna* v. *Stewart, supra,* 13 Cal.3d 413, 422.)

Cal.) that 'A party has the right to move for a new trial upon any or all of the grounds permitted by the statute, and if the record on which his motion is based discloses more than one ground for which a new trial should be granted, the court cannot, by stating in its order that the motion is granted upon one ground only, and denied upon the others, deprive the other party of the right to a review by this court of the entire record. . . . If there be any grounds upon which its action can be upheld, the order will be sustained, *irrespective of the particular ground given by that court,* whether in an opinion or by a statement in the order itself.' (Italics added.)" (*Treber* v. *Superior Court, supra,* 68 Cal.2d 128, 133.)

This precise procedural analysis was followed recently in *Estate of Sheldon,* 75 Cal.App.3d 364 [142 Cal.Rptr. 119]. In that case the order based on the ground of insufficiency of the evidence was found to be defective. Nevertheless the court said, "[i]t follows that though we cannot consider the ground of insufficiency of the evidence to justify the verdict, we are required to discuss the other . . . [ground] stated in the motion—[that the judgment was against the law]—to determine whether . . . [this ground] furnishes a basis for affirming the order." (*Id.,* at p. 371.)

■ So it is here. The minute order of February 15, 1977, was clearly defective in terms of the sufficiency-of-the-evidence ground, and so we are required to search the record to see if there is anything to indicate that the order quashing the writ was "against the law," the other ground urged by wife as a basis for granting a new trial.

### 3. The New Trial Order On The Merits

■ The process of review as above noted is itself subject to certain rules by which we are bound. For one, an appellate court will rarely disturb an order granting a new trial and then, only on a clear showing of abuse of discretion. (*Adams* v. *American President Lines,* 23 Cal.2d 681, 685 [146 P.2d 1].) However, where the ground under consideration is that the original judgment order is "against the law," the area of judicial action generally is not one involving discretion. The initial choice of the trial court challenged by a motion on this ground was either right or wrong, and this is the nature of the evaluation which must be made in passing upon a motion for a new trial where "against the law" is the ground. Stated otherwise, a decision is "against the law" where the evidence is insufficient in law and without conflict on any material point. (*Kralyevich* v. *Magrini,* 172 Cal.App.2d 784, 789 [342 P.2d 903].)

Evaluating the propriety of the new trial order on this basis, then, we observe that wife presented, *inter alia*,[7] the following contentions in support of her new trial motion: (1) even if Civil Code section 4801.5 could be applied, it could only justify termination of payments for two of the six years the payments were due under the terms of the agreement; (2) emancipation of the daughter did not justify automatic termination of her support; and (3) the quashing of the writ was actually an attempt contrary to law to modify retroactively the past-due child and spousal support.

In his resistance to the first contention, husband relied on a previous version of Civil Code section 4801.5 to argue that the onset of the conditions therein contained required that support payments must be terminated and those paid out returned. The version of Civil Code section 4801.5 to which husband referred provided in pertinent part, "[u]pon the petition of a spouse who has been ordered to pay support . . . the court shall revoke the order for support upon proof that the spouse to whom support has been ordered to be paid is living with a person of the opposite sex and holding himself or herself out as the spouse of the person for a total of 30 days or more . . . . The court shall order the restitution of any support which has been paid since the date upon which the spouse to whom support has been ordered to be paid commenced holding himself or herself out as the spouse of the person." Husband contended that wife had lived with one Louis Baca and held herself out to be his wife, and had done so since 1970. Wife responded, at the hearing on the motion, even if she had done what husband contended, that it was improper for the court to apply Civil Code section 4801.5 to terminate *all* past-due support payments. Her point is well taken.

This version of Civil Code section 4801.5 became law on January 1, 1975. Before that date, no provision existed mandating the termination of support under the circumstances set forth in Civil Code section 4801.5, subdivision (a), although Civil Code section 4801, subdivision (c), dealt with this subject matter area. The language in Civil Code section 4801.5

[7]Wife also contended that the marital settlement agreement's provision for six years of spousal support superseded the court's power under Civil Code section 4801.5. As authority for her position, she cited *In re Marriage of Harris*, 65 Cal.App.3d 143 [134 Cal. Rptr. 891]. In *Harris*, the marital settlement agreement provided that wife was to receive support until her remarriage. It also stated that it was irrevocable. Because the agreement was specifically made irrevocable, the *Harris* court concluded that support could not be terminated under section 4801.5. In this case, however, the agreement failed to state that it was irrevocable. *Harris* cannot be applied here, and this argument is meritless. However, wife's other three arguments are supportable.

requiring restitution could be interpreted to imply that all payments due and unpaid during the period of living together and "holding out" are to be forgiven and are to be retained by the other spouse. However, even if this statute were to be so construed, it is clear that only such payments as became due *after* the effective date of Civil Code section 4801.5 (Jan. 1, 1975) could be retained upon termination of the spousal support order. This follows because the husband could seek restitution of payments made only after the effective date of the statute. (*In re Marriage of Ludwig*, 58 Cal.App.3d 744, 749 [130 Cal.Rptr. 234].) Therefore, assuming that wife did live with another man and held herself out to be his wife, only the support due from January 1975 to June 1976 (when the last payment was to be made) could be retained by husband. Under Civil Code section 4801.5 the payments that fell due from 1971 to 1974 could not have been terminated, and as a consequence the sums due during that period were subject to recovery by execution. On this contention, then, the wife was correct in arguing that the order quashing the writ *in its entirety* was against the law.

■ Next, wife contended to the trial court that emancipation of her daughter, at age 17, could not of itself justify husband's termination of child support, especially when the marital settlement agreement provided that such support was to continue until age 21. She relied on *Lehrer* v. *Lehrer*, 63 Cal.App.3d 276 [133 Cal.Rptr. 709], wherein the court concluded on facts similar to those here, that emancipation "does not automatically terminate the parent's obligation of support. [Citation.]" (*Id.,* at p. 280.) Hence, wife was correct in contending, to the extent that the order quashing the writ was a decision to terminate child support based solely on daughter's alleged emancipation, that the order was against the law.

■ Finally, wife argued that husband's motion to quash the writ was actually an attempt retroactively to modify past-due support payments, in violation of Civil Code sections 4801[8] and 4700.[9] Husband responded that wife's position was contrary to the holding in *Jackson* v. *Jackson*, 51 Cal.App.3d 363 [124 Cal.Rptr. 101], and therefore invalid. In

---

[8]Civil Code section 4801 provides in pertinent part: "Any order for support of the other party may be modified or revoked as the court may deem necessary, *except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke.*" (Italics added.)

[9]Civil Code section 4700 provides in pertinent part: "Any order for child support may be modified or revoked as the court may deem necessary, *except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke.*" (Italics added.)

*Jackson,* the appellate court ruling held that the trial court had erred in concluding that it had no discretion to invoke its equitable jurisdiction in favor of the husband's motion to quash, and the case was remanded for the exercise of such a discretion. (*Id.,* at p. 366.) Wife countered again with *Lehrer.*

In *Lehrer v. Lehrer, supra,* 63 Cal.App.3d 276, there was likewise an effort made to quash a writ of execution by means of which the wife sought to recover allegedly unpaid increments of child support. The triggering of the husband's decision to cease the support payments was his daughter's decision to depart on a trip to Mexico with a young man about the time she became 18 years old. Husband argued that the daughter had become "emancipated" and that the writ should be quashed because he was no longer legally obligated to pay support. Wife responded that the husband should have first obtained a modification of that judgment for support, and, having failed to do so, that the support decree could not be modified retroactively. The trial court agreed with the wife's position, and the order denying the motion to quash was affirmed on appeal.

In some quarters, the decisions in *Jackson* and *Lehrer* are regarded as being in conflict. We do not see them as such. In both cases a wife had obtained a writ of execution based on a prima facie showing of husband's failure to pay monthly increments in accordance with the terms of a judgment for support. In both cases the husband moved to quash the writ. In both cases the trial court concluded that the husband's effort was an illegal attempt to obtain a retroactive modification of a support order in violation of section 4700, subdivision (a) of the Civil Code.

In both *Jackson* and *Lehrer* the husband appealed from the order denying his motion to quash. In *Jackson,* on remand, the trial court was directed to vacate its order denying the motion to quash "to permit the trial court, in the exercise of discretion and by the application of equitable considerations" to reconsider its ruling. (*Jackson v. Jackson, supra,* 51 Cal.App.3d 363, 366.) In *Lehrer* the trial court order denying the motion to quash was affirmed on appeal. The opinion says, "[h]aving failed to avail himself of the proper procedure of seeking modification of the 1961 order, Husband is in no position to demand retroactive approval of his conduct," citing *Spivey v. Furtado,* 242 Cal.App.2d 259, 265, 267 [51 Cal.Rptr. 362]. (*Lehrer v. Lehrer, supra,* 63 Cal.App.3d 276, 280-281.)

How then are *Jackson* and *Lehrer* to be reconciled? In our view, the distinction can be found in the respective advocative postures of the husbands which derived from the differing factual backgrounds found in the two cases. In *Jackson,* the daughter had maintained a permanent residence in the former husband's home during a part of the time embraced by the period of alleged delinquency. In essence, therefore, husband's motion was based upon a contention that he had *discharged* the obligation which the wife was seeking to enforce. That this was the husband's position and that it was recognized by the court in *Jackson* is implicit in the recitation in the opinion that support orders may *not* be modified retroactively. "While it is true that an order for child support may not be retroactively modified (Civ. Code, § 4700) and that accrued arrearages are treated like a judgment for money [citations] it must be remembered that such orders are an exercise of the court's equitable power and are designed to compel satisfaction of the child support obligation which exists apart from the marriage status." (*Jackson* v. *Jackson, supra,* 51 Cal.App.3d 363, 366-367.)

In *Lehrer,* the husband's motion was urged upon the theory that the amount of the obligation represented by the court had not legally accrued because of the alleged emancipation of his daughter. As noted in the opinion, "[h]usband contends that the trial court's finding of Daughter's emancipation relieved him of all obligation to support her, as of the date of emancipation, and that the court therefore should have quashed the writ of execution in its entirety." (*Lehrer* v. *Lehrer, supra,* 63 Cal.App.3d 276, 279.)

In sum, it appears to us that the motion in *Jackson* did not involve an effort to modify retroactively a judgment for support. It was an attempt to show that the obligation had been discharged. In *Lehrer* there clearly was an effort to seek a retroactive modification, i.e., a contention that the face amount of the writ was legally subject to challenge because the obligation sought to be enforced had not accrued.

Returning to the case before us, as to this third contention on the merits by wife, it appears that the possibility exists that the trial judge could have originally decided to exercise a *Jackson*-type discretion in granting the motion to quash and later thought better of it. To such extent, while we cannot say categorically that the original choice was "against the law," we must on the basis of *American President Lines* decline to disturb the order granting the new trial because there is no showing, in the *Jackson* decisional context, that there has been an abuse

of discretion in the choice of the trial judge to change his mind. In other words, he was within the bounds of permissible action to conclude that the original decision he had made was against the law.

■ To summarize the entire discussion, we have decided that the motion to quash the writ of execution imported into the proceeding at this point the legal concept of a trial, and, as a consequence, that the motion for a new trial was proper to test the propriety of the granting of the motion to quash. ■ We have decided that the notice of intention to move for a new trial was timely filed because the minute order of January 3, 1977, was not an appealable order and not dispositive of the motion; it was the written order of February 1, 1977, which commenced the running of the time for appeal and the time within which to give notice of intention to move for a new trial.

■ With reference to the new trial order itself, we have decided, although it was defective under section 657 to serve the ground of insufficiency of the evidence, that we nevertheless were required by the statute to search the record to see if the order were supportable on the other ground of the motion, i.e., that the decision to quash the writ of execution was against the law.

■ Finally with reference to this search of the record, we have decided on the merits of the motion that the decision to quash the writ in its entirety was against the law for two reasons, and as to the possible presence or absence of equitable considerations, that the trial judge under the rule of *Adams* v. *American President Lines, supra,* 23 Cal.2d 681, did not abuse his discretion in granting the motion for a new trial.

The order granting the new trial is affirmed.[10]

Kaufman, Acting P. J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 9, 1978.

---

[10]Looking ahead to the "new trial" which will take the form of hearing again the husband's motion to quash, the facts as disclosed by the record suggest the *possibility* that the wife may have obtained a writ for more than she is entitled to recover. If this turns out to be the determination of the trial court, the case will be analogous to that where there is a claim for exemption, and the court rules that part of the levy is invalid and that part of the proceeds must be returned to the judgment debtor.